DRAKE v. THE CHICAGO, ROCK ISLAND & PACIFIC RAILWAY COMPANY.

1. **Railroads:** NATURE OF INTEREST IN RIGHT OF WAY: PRESUMPTION. Where a railway company has built and is operating its road over a tract of land, and there is, on the one hand, no evidence that the company owns the land which it occupies with its road, and it is not pretended, on the other hand, by the owner of the tract, that the company is a trespasser thereon, it is fair to presume, as is done in this case, that the company has an easement in the land, acquired either by condemnation or by purchase.

2. ———: OBSTRUCTION OF SURFACE WATER BY EMBANKMENT: LIABILITY OF COMPANY. Where a railway has an easement to build and operate its road over a tract of land, and the nature of the land is such that the building of its necessary embankment will obstruct and throw back upon the land the surface water naturally flowing therefrom, to the damage of the owner of the tract, but such obstruction can easily be prevented by drainage within the right of way, the company will not be presumed, in acquiring its easement, to have negotiated or paid for the right so to obstruct the surface water; and, if it does so, the owner of the land may recover his damages sustained thereby. Possibly the rule might be different in a case where the company owns the fee-simple title to the land which it occupies.

3. **Nuisance:** CREATED BY GRANTOR: LIABILITY OF GRANTEE WITHOUT NOTICE. Where the grantee of an easement discovers a nuisance in connection therewith, and abates it, but afterwards permits it to arise again, he is liable to an action therefor without notice to abate it, even though it was created originally by his grantor.

4. ———: OBSTRUCTION OF SURFACE WATER: SEPARATE CAUSE OF ACTION FOR EACH YEAR'S DAMAGES: STATUTE OF LIMITATIONS. Where defendant had, by its unlawful obstruction of surface water, caused damage to plaintiff for more than five years prior to his bringing his action therefor, and the remedy for the wrong was to be applied by defendant on its

own premises and in the discharge of a subsisting obligation, plaintiff properly brought his action to recover such damages as he had sustained within five years preceding, and such action was not barred by the statute of limitations on the ground that a cause of action arose out of the same wrong more than five years before. *Powers v. Council Bluffs*, 45 Iowa, 652, distinguished.

5. **Evidence**: DAMAGES TO LAND BY OVERFLOW: MEASURE OF. Where land bearing growing crops is damaged by reason of an overflow caused by another's wrong, the true measure of such damages is the difference between the value of the premises immediately before the overflow, and the value of the same immediately thereafter—the growing crops being regarded as a part of the realty; and it was error in such a case to allow plaintiff to testify how much corn he thought the overflowed land would have produced, and how much it would have been worth per acre, basing his estimates upon the crops raised by him on other land.

6. **Railroads**: CONDEMNATION OF RIGHT OF WAY: WHAT DAMAGES CONSIDERED AND COMPENSATED. In the argument of the second point above noted, *held* that, where a right of way for a railway is condemned, the land-owner is entitled to be compensated not only for the value of the land taken, but for all incidental injuries which must necessarily result from the proper construction and maintenance of the road; and the commissioners will be presumed to have considered such injuries and to have allowed compensation therefor.

*Appeal from Van Buren District Court.*

WEDNESDAY, APRIL 23.

ACTION to recover for damages alleged to have been sustained by reason of the accumulation of water on the plaintiff's land, caused by the construction of the defendant's embankment, without the construction and maintenance of proper ditches and culverts. There was a trial to a jury, and verdict and judgment were rendered for the plaintiff. The defendant appeals.

*M. A. Low*, for appellant.

*H. B. Hendershot* and *Sloan, Work & Brown*, for appellee.

ADAMS, J.—The road was constructed in 1870 by the Chicago & Southwestern Railway Company. The defendant in

1872 succeeded to the rights of that company. At the time the road was constructed, the land in question was owned by the plaintiff's grantor. The plaintiff became the owner in 1874. From the time of the construction of the road in 1870 to 1876, no damage appears to have resulted to the land in question. In the latter year the plaintiff began to complain. Soon afterward the defendant constructed a ditch along its right of way from the plaintiff's land to an opening in the road where the same was constructed upon trestle work. This ditch was reasonably successful as a drain until 1880, when it became obstructed by accumulated dirt and other matter, and, while the defendant made some effort to remove the obstructions, they were not in fact sufficiently removed, and, during the cropping seasons of 1880 and 1881, water accumulated upon the plaintiff's land, being prevented primarily by the embankment from escaping, and not afforded a sufficient outlet by the ditch. Certain crops were destroyed, and a portion of the land was rendered wholly untillable. The defendant contends that it did not become liable for any damages, and that, if it did, this action is barred by the statute of limitations, and, furthermore, that the court mistook the proper measure of damages, and allowed improper evidence to be introduced.

I. The first question which presents itself is as to whether the defendant owed the plaintiff any duty in respect to the surface water. The court below thought that it did. It gave an instruction in these words: "In my judgment a railroad company is under legal obligation in constructing its railroad through the country, in crossing farms and land generally, to so construct its embankment as not to flow surface water back upon the land through which it passes. I do not think that the common law with reference to the right of owners of town lots or other lands to fight surface water from them can justly be made to apply to railroad companies."

The general doctrine relied upon by the defendant, to the

effect that every land-owner has the right to exclude surface water from his premises, was fully recognized in *O'Conner v. The Fond du Lac, Amboy & Peoria Railway Company*, 52 Wis., 526, and held to apply even to railroad companies. The court in that case said: "The company has only obstructed a ditch which drained or carried off surface water from the plaintiff's premises. We do not think that the defendant was bound to keep that ditch open on its own land for the convenience of the plaintiff; in other words, the owner of land is under no legal obligations to provide a way for the escape of mere surface water coming onto his land from the land of his neighbor, but has the right to change the surface so as to interfere with or obstruct the flow of such water." In *Gannon v. Hargadon*, 10 Allen, 106, a case between adjacent land-owners, the court said: "The right of the owner of land to improve and occupy it in such manner and for such purposes as he may see fit, either by changing the surface, or the erection of buildings or other structures thereon, is not restricted or modified by the fact that his land is so situated with reference to that of adjoining owners, that an alteration in the mode of its improvement or occupation in any portion of it will cause water, which may accumulate thereon by rains and showers falling on its surface, or flowing on to it over the surface of adjacent lots, either to stand in unusual quantities on other adjacent lands, or pass into and over the same in greater quantities or in other directions than they were accustomed to flow." See, also, in this connection, *Parks v. Newburyport*, 10 Gray, 28; *Wilson v. The Mayor*, 1 Denio, 595; *Cairo etc., Railway Company v. Stevens*, 73 Ind., 278; *Barkley v. Wilcox*, 86 N. Y., 140; *Morrison v. Railroad Company*, 67 Me., 353; *Lynch v. Mayor*, 76 N. Y., 60; *Taylor v. Fickas*, 64 Ind., 167; *Swett v. Cutts*, 50, N. H., 439; *Gibbs v. William*, 25 Kansas, 214; *Grant v. Allen*, 41 Conn., 156.

As holding a different doctrine, the plaintiff cites *Ogburn v. Connor*, 46 Cal., 346; *Tootle v. Clifton*, 22 Ohio St.,

247; *Porter v. Durham,* 74 N. C., 767; *Gillham v. Madison County Railway Company,* 49 Ill., 484; *Gormley v. Sanford,* 52 Ill., 158; *Toledo, W. & W. Railway Company v. Morrison,* 71 Ill., 616; *Livingston v. McDonald,* 21 Iowa, 160; *Cornish v. The C., B. & Q. Railway Company,* 49 Id., 378; *VanOrsdol v. B. C. R. & N. Railway Company,* 56 Id., 470.

In the case last cited, the court held that a railroad company could not be allowed to obstruct a natural channel of water. In *Livingston v. McDonald,* the court held that the owner of the higher land could not be allowed to collect water and precipitate it in increased quantities upon the land below, to the injury of such land. The question as to whether a land owner can be allowed, by changing the surface of his land or erecting improvements thereon, to prevent the escape of surface water from adjacent land, where the same did not flow through any natural channel, has never been determined by this court; and we have to say that it appears to us that such question does not necessarily arise in the case at bar. The cases cited arose between adjacent owners.

There is no evidence that the defendant owns the land which it occupies with its road. Its right was probably that 1. RAILROADS: of an easement. It is not claimed by the plaintnature of interest in right iff that the defendant is a mere trespasser, and, of way: presumption. in the absence of any averment or evidence to that effect, we could not assume that it is. The parties have proceeded upon the theory that the defendant's occupancy is rightful. In the absence, then, of evidence as to the extent of the defendant's right in the premises, we may assume that it is sufficient to make its occupancy rightful, and we cannot assume more. We may proceed, then, upon the theory that the defendant has an easement. The plaintiff's testimony shows that the railroad crosses his land, and we find no evidence to the contrary. The defendant's estate, then, appears not only to be an easement, but it is one to which the plaintiff's estate is the subject or servient estate. The easement, we may assume, was acquired by proceedings for condemna-

tion under the statute, or by purchase, and it matters not which.

The important question is as to what the defendant, or its grantor, the original owner of the easement, must be presumed to have paid for. In *Stodghill v. The C., B. & Q. Railway Company*, 43 Iowa, 26, it was held that the defendant paid for what the commissioners should properly have considered in their estimate, and among the things was not included the right to divert a natural stream of water. On the other hand, it is to be observed that in *Sabin v. Vermont Central Railway Company*, 25 Vt., 363, it was held that the right of way damages covered the right to cast rock on the adjacent premises by blasting, so far as was necessary in the construction of the road. The draining of wells and the diversion of water courses, it is said, are covered by the right of way damages, where the same are necessary in the construction of the road. *Proprietors of Locks and Canals v. Railroad Company*, 10 Cush., 385. If we could suppose a case where the construction of a railroad would necessarily interfere with the flow of surface water, and cause it to accumulate and stand on the land from which the right of way is taken, the injury that would accrue therefrom should, we think, be considered by the commissioners and embraced in their appraisement of right of way damages. The land owner is entitled to be paid not merely the value of the land taken, but for all incidental injuries which must necessarily result from the proper construction and maintenance of the road. *Kucheman & Hinke, v. The C., C. & D. Railroad Company*, 46 Iowa, 366; *Imlay v. Railroad Company*, 26 Conn., 249. But the undisputed evidence in the case at bar shows that the drainage of the surface water from the plaintiff's premises was easily maintainable by the construction and maintenance of a ditch along the defendant's right of way to its trestle work. The case is not different from what it would have been if the defendant could have effected the drainage by the construction

2. ——: obstruction of surface water by embankment: liability of company.

and maintenance of one or more culverts. Where the effect of a mere embankment would be to obstruct the passage of surface water and cause damage to the premises from which the right of way is taken, but sufficient drainage can be easily secured by a ditch or culvert, it appears to us that, when the company applies for a right of way, it could not be presumed to be desirous of securing and paying for the privilege of obstructing the passage of the water. Such being our view, we could not say that the right to obstruct the passage of the water was included in the right of way damages. The owner, then, of the premises from which the right of way was taken, was paid, as we must presume, upon the theory that the company preferred to protect him against this incidental injury. The very enjoyment of the easement, therefore, carried with it, day by day, the obligation to furnish this protection. Possibly this would not be so if the evidence showed, or if we could assume, that the company acquired the fee simple title to the land which it occupies. Without committing ourselves to an approval of the instruction as a general and unqualified proposition, we have to say that, as applied to the facts of this case, it appears to us to be correct.

II. It is not shown that the plaintiff expressly notified the defendant of the effect upon his land of the construction of the embankment without suitable drainage. The

3. NUISANCE: created by grantor: liability of grantee without notice.

defendant insists that, inasmuch as the embankment was not constructed by itself, but by its grantor, it did not become liable in the absence of notice. It cites and relies upon *Slight v. Gutzlaff*, 35 Wis., 675. In that case, RYAN, C. J., said: "When a lessee or grantee continues a nuisance of a nature not essentially unlawful, erected by his lessor or grantor, he is liable to action for it only after notice to reform or abate it." Citing *McDonough v. Gilman*, 3 Allen, 264; *Johnson v. Lewis*, 13 Conn., 307, and several other cases. See, also, in this connection, the late case of *State v. Robinson*, 52 Iowa, 228. But the case at bar, it appears to us, is distinguishable. The de-

fendant seems to have become aware of the effect of the embankment in preventing the escape of surface water from the plaintiff's land, and actually abated the nuisance, but afterward suffered the nuisance to arise again by suffering the ditch to become obstructed. We have discovered no decision or principle upon which we could hold that the defendant was entitled to notice.

III. We have next to consider whether the plaintiff's claim is barred by the statute of limitations. The first injury was

4. ——: obstruction of surface water: separate cause of action for each year's damages: statute of limitations. sustained in 1876. This action was brought in 1882, more than five years thereafter. Without question, an action for the injury sustained in 1876 would be barred, but the plaintiff makes no claim for that injury. The defendant's position, however, is, that the moment the plaintff's land was overflowed he had a right, if the circumstances were such as to give him a right of action, to maintain an action once for all, upon the theory that no protection would be furnished him, and that his damages would be measured by the diminution of the value of his premises by the construction of the road in the manner in which it was, without ditch or culvert then or thereafter to be furnished. He relies upon *Powers v. Council Bluffs*, 45 Iowa, 652. In that case the whole injury was regarded as being received at one time, and, that being more than five years before the commencement of the action, it was held to be barred. But the injury in that case was of such a character that it was beyond the city's power to remedy it. The remedy to be applied, if any, was by the construction of a wall on the plaintiff's premises, where the city had no right to go. The remedy in the case at bar is to be applied on the defendant's premises, and that, too, in the discharge of a subsisting obligation. The case falls under *McConnel v. Kibe*, 29 Ill., 483, and *Bowyer v. Cook*, 4 Manning, Granger & Scott, 236. In our opinion, the plaintiff's action is not barred.

IV. The plaintiff was allowed, against the objection of

the defendant, to testify, in substance, that the land in ques-
tion would, if it had not been flooded, have pro-
duced as much corn as he raised on other land,
and that he guessed that it would have produced
from forty to fifty bushels per acre, and that the corn would
have been worth $15 per acre.

*5. EVIDENCE: damages to land by over- flow: measure of.*

It is not usual, we think, where ungrown crops are de-
stroyed by being flooded, to allow witnesses to go into a defi-
nite calculation of what the crops would have been worth,
based upon evidence as to the quantity and value of other
crops. All calculations which embrace speculative profits
should, as far as the nature of the case will allow, be carefully
excluded. Ungrown crops are a part of the realty. The
injury done is to be deemed an injury to the realty. The
question is as to how much the premises were diminished
in value. In *Chase v. N. Y. Central R. Co.*, 24 Barb.,
273, an action for damages sustained by reason of an over-
flow of water upon the plaintiff's premises, caused by the
defendant's embankment, it was held that the jury was cor-
rectly instructed that the measure of the plaintiff's damages
was the difference between the value of the plaintiff's prem-
ises immediately before the injury happened, and the value
of the same immediately after.. Substantially the same rule
was held in *Easterbrook v. Erie R. Co.*, 51 Barb., 94. Where
the flooded premises are covered by an ungrown crop, their
value should of course be estimated with reference to the
crop. But then the estimate should be made with reference
to the crop at the time of the injury. In the case at bar, the
flood occurred in the early part of the season, when the corn
was for the most part about a foot high. The premises were
enhanced in value much or little by the crop, according to its
condition and prospects. But, whatever its condition and
prospects might. have been, it, like all other ungrown crops,
was exposed to adverse contingencies, and its value could not,
we think, properly be estimated upon the basis of the proven
value of some other crop which matured, because the very

fact that it was exposed, and was involved in more or less uncertainty, detracted from its value as it stood at the time of the injury; and we are confined in our estimate to that time. In other respects, also, we think that the evidence admitted was unreliable. It appears from the evidence that the corn which was destroyed was upon low ground. The neighboring fields of corn which matured must, we think, have been upon higher ground. Now, if the season was already wet, as we infer, at the time of the injury, it seems to us that the comparison sought to be made was an unsafe one, and that the evidence should have been excluded. It was proper to show any fact or circumstance pertaining to the condition and prospects of the crop, so far as the same were discoverable at the time of the injury, because such facts and circumstances affected the value of the premises at that time. The jury was entitled to consider whatever it may be presumed would have been considered by a careful person desiring to buy. Looking at the premises in this way, as they were immediately before the injury, and again immediately afterward, they would arrive at the difference in value. We may also say that, in arriving at the difference in value of the premises, they should not only take into consideration the crops destroyed, but those that were injured, and any permanent damage which the premises sustained, and the inconvenience, if any, which the plaintiff necessarily suffered in passing from one part of his farm to another, in the ordinary discharge of his duties in carrying on the farm.

Whether, if it had been shown that he could, at moderate expense, have relieved his land from the accumulated water, and prevented a portion of the injury, such fact might properly have been considered in reduction of his damages, we need not determine, as no such question has been presented. For the error above pointed out in the admission of evidence, the judgment must be

REVERSED.