SULLENS v. THE CHICAGO, ROCK ISLAND & PACIFIC RAILWAY COMPANY.

1.　**Railroads** : OBSTRUCTING SURFACE WATER BY EMBANKMENT : LIABILITY.　Where the defendant built an embankment across a wide creek bottom, and a culvert over the creek, thus causing all the surface water of the bottom to flow into the channel of the creek, but the culvert was not of sufficient capacity to carry the waters of the creek when thus augmented, and the result was that the land above the embankment was flooded, the land-owner may recover damages of the company. (See opinion for discussion of authorities *pro* and *con*.)

2.　————— : ————— : WHAT IS SURFACE WATER.　In such case, water which left the creek channel far above the culvert, and flowed over plaintiff's land, but, on account of the embankment, was turned back into the channel again above the culvert, must be regarded, in determining the sufficiency of the culvert, as no longer surface water, but as though it had flowed all the time in the channel.

3.   **Evidence** : ERROR IN ADMITTING : CURED BY INSTRUCTION.   Error in the admission of evidence is cured by an instruction which in effect withdraws the objectionable evidence from the consideration of the jury.

4.   **Railroads**: OBSTRUCTING WATER : DAMAGES.   In an action for damages caused by the obstruction of water by a railroad embankment, the court stated that the measure of plaintiff's damages for each year was the difference between the fair market value of the land immediately before the injury each year, and its fair market value immediately after such injury ;  also that the term " land," so used, included the growing crops.   *Held* to be in accord with the rule announced in *Drake v. Chicago, R. I. & P. Ry. Co.*, 63 Iowa, 302, and correct.

5.   ——— : ———— : STATUTE OF LIMITATIONS.   In such case, where the damage was likely to be of yearly occurrence, depending upon the seasons, and, on that account, could not be estimated when the obstruction was built, *held* that the plea of the statute of limitations, based on the fact that the action was not begun within five years after the obstruction was built, was properly taken from the jury.   (See opinion for cases cited.)

6.   **Verdict** : AVERAGE : AFTERWARDS AGREED TO.   Where each juror states the amount which he thinks plaintiff ought to recover, and the sum of these amounts is divided by the number of jurors and the result is afterwards agreed to as the amount of the verdict, *held* that it is valid.  (See *Hamilton v. Des Moines Valley Ry. Co.*, 36 Iowa, 35.)

[SEEVERS, C. J., *dissenting.*]

*Appeal from Jasper District Court.*—HON. J. K. JOHNSON, Judge.

FILED, JUNE 9, 1888.

ACTION to recover damages alleged to have been caused by the improper obstruction of a stream which flows through the land of plaintiff and across the right of way of defendant.   The cause was tried to a jury, and verdict and judgment rendered for plaintiff.   The defendant appeals.

*T. S. Wright* and *Winslow & Varnum*, for appellant.

*Phillips & Day* and *Kerr & McElroy*, for appellee.

ROBINSON, J.—The defendant owns and operates a railway which crosses a stream of water in Jasper county, known as "Rock Creek." At the point of crossing, the stream is from twenty-five to thirty feet in width, and is bordered on the east by a strip of land lower than the level of the railway track, and on the west by low ground, which extends back from the creek a distance of from a quarter to half a mile. The land and stream form a valley bounded on the west by highlands. Prior to 1875, defendant's railway crossed the creek and lowlands by means of a wooden bridge and trestle-work. During that year a stone culvert was constructed over the stream, and embankments of earth were commenced and completed a year or two later, which extended across the lowlands and culvert to a height of about forty feet above the general level of the lowlands. The culvert was about eighty feet in length, thirty in width, and twenty-two in height, and constituted the only opening in the embankment for the passage of the waters from above it. The plaintiff owns the land which is bounded on the south by the right of way of defendant on which the embankment in question is built. Rock Creek flows, for a considerable distance, through the lands of plaintiff before it reaches the culvert in question. In June, 1882, a portion of the culvert fell in consequence of high water. It was never rebuilt; but, to carry its railway across the stream, defendant removed a portion of the earth from the culvert, and constructed over it a wooden bridge. It is contended by plaintiff that, when the culvert was constructed, the bed of the stream under it was raised several feet by means of stone-work; that a portion of it fell in consequence of the fault of plaintiff, precipitating into the stream below, in such manner as to further obstruct the flow of water, large quantities of stone and earth; that defendant had wrongfully permitted said obstacles to remain in the stream; that the embankment caused all the water which fell upon the land adjacent to said stream to flow through said culvert; that

its capacity, when constructed, was not sufficient to discharge such water; and that its original capacity has been diminished, and the flow of water hindered, by the obstacles aforesaid; that, in consequence of these faults, the lands of plaintiff were overflowed at different times during four years, commencing with 1882, and great damage caused thereby. It is insisted by defendant that, in constructing the embankment and culvert in question, it was only required to make provision for the flowing across its right of way of so much water as could be contained within the banks of the stream, and that it is not responsible for damages which were caused by water which overflowed such banks.

I. The question involved is one upon which there is much conflict of authorities. Many of them seem to sustain the position of appellant. The case of *Abbott v. Kansas City, St. J. & C. B. Ry. Co.*, 83 Mo. 271, is in many respects similar to this case, and is relied upon by appellant. That case adheres to the common-law rule, and seems to depend in part upon the fact that, by the statutes of Missouri, the common law is made the rule of action and decision in that state. In this state there is no requirement of that kind, and we are free to determine the questions involved according to such rules of law as shall seem to us to be applicable. The difficulty which must sometimes arise from attempts to apply the strict rule of the common law to all cases is illustrated by the fact that the supreme court of Missouri was constrained to abandon it in two cases, which were overruled in the one above cited. Each case must of necessity depend largely upon its own facts. Even in those states where the common law prevails, the courts hold that the land-owner must improve his property in a reasonable manner. *Hosher v. Kansas City, St. J. & C. B. Ry. Co.*, 60 Mo. 329; *Abbott v. Ry. Co., supra; Pettigrew v. Evansville*, 25 Wis. 229. "But persons exercising this right to improve and ameliorate the condition of their own land must exercise it in a careful and prudent

*1. Railroads: obstructing surface water by embankment: liability.*

way.  *  *  *  Each proprietor, in such case, is left to protect his own lands, against the common enemy of all,  *  *  *  so as to occasion no unnecessary inconvenience or damage to plaintiff." *McCormick v. Kansas City,* °*St. J. & C. B. Ry. Co.*, 57 Mo. 433.  See, also, *Benson v. Chicago & Alton Ry. Co.*,  78 Mo. 504. This court said in *Livingston v. McDonald*, 21 Iowa, 172, that "the rules of the civil law,  *  *  *  so far as they deny to the upper owner the right to collect the water in a body, or precipitate it in greatly increased or unnatural quantities upon his neighbor, to the substantial injury of the latter, we deem to be just and equitable;  *  *  *  and to this extent it is supported by the weight of authority in the common-law courts." It also said: "We recognize the general rule that each may do with his own as he pleases, but we also recognize the qualification that each should so use his own as not to injure his neighbor." *Id.* 173.  The same principle, as applied to the obstructing of a flow of surface water from the dominant to the servient estate, was recognized in *Drake v. Chicago, R. I. & P. Ry. Co.*, 63 Iowa, 302.  The rule thus far adhered to by this court seems to be just, and we do not think there is sufficient cause to abandon it.  The reasons for requiring that improvements on land be so made as to do no unnecessary injury to other lands apply with especial force to the construction of railways.  These have become so necessary to modern civilization that their builders require and are given extraordinary privileges.  One of the most important of these is the right to take and hold so much real estate as may be necessary for the location, construction and convenient use of their railways.  The primary object for which railways are built is not to improve the particular tracts of land over which they pass.  They are located, in part, with reference to the configuration of the country through which they pass, and the cost of construction.  On the other hand, the general land-owner has no voice in the location and construction of a railway.  The burden which it may cast upon his land is not such as springs from

those improvements which are designed to make the soil productive. Hence it is not a burden to which his estate is naturally servient. If his land be taken by the railway corporation, he is entitled to compensation for such injury as naturally results from the taking ; but his land may not be taken, or, if taken, the railway may be so constructed over it as to cause damage which was not a necessary result of the taking. In such cases, if injury result from an improper construction of the railway, or from wrong in its operation, we see no reason why the railway corporation may not be made to respond in damages. In this case, defendant raised its embankment across the valley of Rock Creek in such a manner as to turn all the water which flowed from above into the main stream. It was not practicable for plaintiff to counteract the effect of this by means of banks or ditches. Whatever its primary object may have been, the fact is that defendant assumed control of the surface waters of the valley, changed their course, and compelled them to flow through an outlet of its own construction. Under these circumstances, we think it was the duty of defendant to construct and maintain its culvert so that its capacity should be sufficient to properly pass the waters of such floods as might reasonably be expected to occur. It would be most unreasonable to limit the obligation of defendant to the providing of such a culvert as would carry off the water which could be contained within the banks of the stream. It is contended by appellant that the case of *Morris v. City of Council Bluffs*, 67 Iowa, 343, is an authority against the conclusion which we have reached. That case involved the right of a city to establish the grade of its streets, and its duty to provide permanent means for the escape of overflow water. It was in effect held that it was not the duty of the city to do more than provide temporary means for the escape of surface water in such cases, and that it was the duty of the lot-owner to bring his lot up to grade, and thereby escape the overflow of which he complained. We do not think that the doctrine of that case is applicable to this. We are of the opinion that the jury were properly

instructed in regard to the duties and liabilities of defendant.

II. Appellant complains of the giving of an instruction in the following language: "You are instructed
2. —:—: that if Rock Creek was a flowing stream the
what is sur- year round, with well-defined banks, and
face water. that defendant constructed over said stream
a culvert for the purpose of enabling its railway to pass over said water-course, and if you further find from the evidence that in times of high water, at a point five hundred feet above said culvert, more or less, any portion of the water flowing in said creek in times of high water left its banks at such point above said culvert, and then, for a short distance, flowed over the land of plaintiff, but that the same was forced, by the embankment of defendant, back into the creek again, above said culvert, then such waters are not surface waters, but must be regarded by you, in the determination of this case, in determining the sufficiency of said culvert, in the same light as if they had continuously flowed in said creek." The theory of the instruction appears to be that, when the overflowed water is turned back into the stream, it ceases to be surface water. This seems to us to be correct. Jones v. Hannovan, 55 Mo. 462. But, if the instruction will bear a different construction, no prejudice could have resulted from it under the facts of the case.

III. Complaint is made of the ruling of the court in admitting evidence as to the depreciation of the rental
3. EVIDENCE: value of the premises in controversy on
error in account of the alleged wrong of defendant.
admitting; It may be conceded that there was error in
cured by admitting this evidence. But the court so
instruction. charged the jury as to the measure of plaintiff's recovery as to necessarily withdraw from their consideration the evidence of which complaint is made. The error should therefore be deemed to be without prejudice. *Ham v. Wisconsin, I. & N. Ry. Co.*, 61 Iowa, 719; *Lathrop v. Central Iowa Ry. Co.*, 69 Iowa, 109.

IV. It is also insisted that the jury were improperly

instructed in regard to the measure of recovery. They were told that the measure of plaintiff's

**4. RAILROADS: obstructing water: damages.** damages for each year was the difference between the fair market value of the land immediately before the injury each year, and its fair market value immediately after such injury; also that the term "land," so used, included the growing crops. This instruction accords with the rule announced in *Drake v. Ry. Co.*, *supra*, and is, we think, correct. The injury was not necessarily permanent because it was to real estate; hence there was no error in permitting the jury to estimate damages for each year of the overflow.

V.   This action was commenced in February, 1886. The defendant pleaded the statute of limitations as a

**5. ——:——: statute of limitations.** defense, and insists that plaintiff's right of action accrued in 1875, when the culvert was completed. The damages which might result from the character of the culvert could not have been foreseen and estimated at that time with any degree of accuracy, but depended, in part, upon the seasons. The jury found specially that the first flood after the culvert was built occurred in 1881. We therefore conclude that the plea of the statute was properly withheld from the jury. *Drake v. Ry. Co.*, *supra; Van Orsdol v. Burlington, C. R. & N. Ry. Co.*, 56 Iowa, 470.

VI.   Misconduct on the part of the jury in arriving at their verdict is alleged. Each juror gave the sum he

**6. VERDICT: average: afterwards agreed to.** thought should be allowed for each separate year, and the amount of those sums was divided by twelve, and the quotient inserted in the verdict as the amount plaintiff was entitled to recover; but there was no agreement in advance to be bound by the result. After it was ascertained it was agreed to by the jurors. *Hamilton v. Des Moines Valley Ry. Co.*, 36 Iowa, 35.

We have examined the record with care, but fail to discover any error prejudicial to defendant. The judgment of the district court is therefore   AFFIRMED.

SEEVERS, C. J., dissents.