SOPHRONIA A. HUNT, Appellee, v. IOWA CENTRAL RAILWAY COMPANY, Appellant.

1. **Appeal:** RIGHT OF: FROM JUDGMENT PENDING MOTION FOR NEW TRIAL.   An appeal to the supreme court will lie from a judgment rendered on the verdict of a jury, although the cause be pending in the district court upon a motion for a new trial.

2. **Railroads:** OVERFLOW OF LANDS : DAMAGES INCLUDED IN CONDEMNATION OF RIGHT OF WAY.   Damages sustained by a land owner from a discharge of surface water upon his lands, resulting from a railroad company's negligent construction of its roadbed, are not such damages as, in the contemplation of the law, are included in the amount paid by the railroad company for its right of way.

3. ——— : ——— : DAMAGES : STATUTE OF LIMITATIONS.   The cause of the overflow in question was established more than five years prior to the commencement of this action, but the quantity of water discharged upon the plaintiff's land varied during different seasons, being dependent upon amount of rainfall, and the quantity which fell at one time, and at times the overflow might be so slight as to be beneficial to the land, and at another time be so great as to occasion much damage.   *Held*, that the first overflow affording no safe basis for the computation of future damages, the action was not barred.

| 86 | 15 |
|----|-----|
| 86 | 354 |
| 86 | 15 |
| 88 | 287 |
| 86 | 15 |
| 91 | 542 |
| 86 | 15 |
| 94 | 92 |
| 86 | 15 |
| 106 | 324 |
| 86 | 15 |
| 107 | 490 |
| 86 | 15 |
| 108 | 704 |
| 86 | 15 |
| 118 | 216 |
| 86 | 15 |
| 119 | 477 |
| 86 | 15 |
| 123 | 334 |
| 86 | 15 |
| 129 | 477 |
| 86 | 15 |
| 135 | 597 |
| 86 | 15 |
| 141 | 732 |

4. ———— : ———— : EVIDENCE. Certain deeds having been introduced in evidence by the defendant showing that it acquired title to the road in question in May, 1888, *held,* that the exclusion of evidence, offered by the defendant, that the receiver through whom it acquired title, and who had formerly been operating the road, made his final settlement with the court in May, 1889, if error, was without prejudice.

5. ———— : ———— : DAMAGES. The deposit of earth, clay and like substances upon the plaintiff's land being the natural result of the overflow complained of, *held,* to be recoverable in such action, although said items of damage were not specially pleaded.

*Appeal from Louisa District Court.* — HON. J. K. JOHNSON, Judge.

FRIDAY, MAY 27, 1892.

ACTION for damages caused by surface water discharged upon the plaintiff's lands. From a verdict and judgment for the plaintiff, the defendant appeals. *Affirmed.*

*Anthony C. Daly, Theo. F. Bradford* and *D. N. Sprague,* for appellant.

*Newman & Blake,* for appellee.

KINNE, J.—The plaintiff is the owner of forty acres of land in Louisa county. She claims that the defendant, owning and operating its line of railway through said county and across her land, has on its right of way a ditch on the north side of its roadbed, commencing a mile southeasterly from the plaintiff's land, and by means of which surface water from land lying east of the plaintiff's is conveyed upon her land, and accumulates and stands upon the same in large quantities, submerging the same; that the defendant has provided no means of escape for the water so accumulating ; that formerly said surface water did not flow from lands east of the plaintiff's over and upon her land, but since the same has been diverted by

said ditch, and for two years past, by said means it has been gathered and conducted upon her lands, destroying her crops, and rendering her land untillable, and greatly depreciating its value ; that said damage and injury is the result of such ditch ; that the water conducted on said land by said ditch submerged about three acres per year, on an average, since the building of the road, and the water has been diverted as aforesaid most of the years since the road was built.  The last two years the land overflowed three times.  The defendant denies generally, and pleads, that the road was constructed in 1881 by the Chicago, Burlington & Pacific Railroad Company, and the ditch complained of was then built by digging and taking earth from the sides and throwing it up in the center for the embankment upon which the ties and rails were laid, and that all damage arising out of its construction were paid for when the right of way was acquired ; that the defendant has been in possession and ownership of said railway from June 1, 1889, having purchased it in the same condition it was in ( at the time of the commencement of this action ) at a foreclosure sale ordered by the circuit court of the United States for the southern district of Iowa in a case then pending therein, wherein the Central Trust Company of New York was the plaintiff and the Central Iowa Railway Company the defendant ; the latter company being the grantee of the Chicago, Burlington & Pacific Railroad Company, and no notice was given the defendant at any time to reform or abate the said ditch ; that at the time of building said railway and the making of said ditch the plaintiff did not own said premises ; that plaintiff could, at a moderate expense, have relieved her land of the accumulation of water, and prevented the injury in whole or in part ; and that the alleged cause of action set out in the plaintiff's petition did not accrue at any time within five years next before she began her action.

I. It appears in this case that judgment was entered against the defendant at once on the coming in of the verdict. That afterwards, and on November 12, 1890, it filed its motion for a new trial. This motion was taken under advisement by the court. February 2, 1891, it perfected its appeal to the supreme court. April 3, 1891, the motion for a new trial was submitted, and the court refused to pass upon the same, holding it had no jurisdiction, the cause having been appealed. April 8, 1891, the defendant undertook to appeal from the refusal of the court to pass upon the motion. The appellee now moves to dismiss the appeal, claiming that, as the case had not been finally disposed of by the district court at the time the appeal was taken, and, as the defendant filed a motion for a new trial in that court, he is precluded from appealing. Our statute provides that "the supreme court may review and reverse on appeal any judgment or order of the district court, although no motion for a new trial was made in such court." Code, sec. 3169; *Drefahl v. Tuttle*, 42 Iowa, 177; *Brown v. Rose*, 55 Iowa, 734; *Presnall v. Herbert*, 34 Iowa, 539; *Beems v. Chicago, R. I. & Pac. R'y Co.*, 58 Iowa, 150. From these and other cases that might be cited, it is clear that all errors at law arising upon the trial, and to which proper and timely exceptions are taken, may be reviewed on appeal by this court without having been embodied in a motion for a new trial. It is also certain that the pendency of a motion for a new trial at the time an appeal is taken will not in any manner invalidate the appeal or prevent this court giving the same consideration to errors properly raised by it, and on the trial, as it might do, had no motion been filed. *Brown v. Rose*, 55 Iowa, 734. The motion to dismiss will be overruled.

II. The appellant insists that all the damages sued

*1. APPEAL: right of: from judgment pending motion for new trial.*

for in this action are such as, in the contemplation of
the law, would be included in the amount

**2. RAILROADS: overflow of lands: damages included in condemnation of right of way.** paid for the right of way. The plat
below will show the course of the railroad,
the situation of the lands with reference
thereto, the course of the surface water
before the railroad was built, and the point where the
water is discharged upon the plaintiff's land.

PUBLIC HIGHWAY.

Prior to the erection of the railroad embankment
there was a natural depression in the ground, which
formed an outlet for surface water on the west eighty
of Campbell's land. A culvert was placed at that
point. A ditch also existed between the Hunt and
Wright lands in the highway separating them. This
highway ditch caught most of the surface water east of
the same, and which fell on the west part of the Wright
land, and the Campbell outlet furnished a place of
escape for all surface water falling upon Curran's land,
Campbell's land and the west part of Wright's, as also
adjoining lands. It would appear, then, from the tes-
timony that prior to the building of the railroad no
surface water which fell east of the Hunt land after-
wards passed on or over it. At the point where the
Campbell outlet was the railroad company put in a tile
culvert under its track. The ditch on the north side

of the railroad embankment washed out deeper than the tile, and in time the company lowered this tile culvert, but, the opening being too small to permit all the water to pass through, part of it ran along the ditch, and again washed below the tile culvert, so that this culvert was useless as a waterway. The highway ditch already spoken of, and which, before the railroad was built, carried off the water from the Wright land, since the building of the road has ceased to do so, as the railroad ditch where it crosses it is lower than the highway ditch, and the former carries all water which formerly emptied into said highway ditch, as well as that gathered in the highway ditch. So all the water is carried along and emptied upon the Hunt land. It passes through a culvert on the Hunt land about thirty rods west of the east line. Some three hundred feet west of this culvert the water in the ditches runs west until it empties into a natural outlet. But, from a point three hundred feet west of the Hunt culvert the water runs east and passes through it. It appears that, after the notice was served upon the defendant, it, at an expense of eight dollars, built a dam across its ditch on the north side of its track, and a little to the west of the Campbell culvert, which now forces all the water naturally accumulating there to pass through said culvert, thereby preventing the overflowing of the Hunt lands.

From these facts we think it is clear that the damage sued for herein cannot be said to have been considered and settled for in the condemnation proceedings. We have examined the cases cited by counsel for the appellant, and we think they do not support his contention. In principle this case is not different from *Drake v. Chicago, R. I. & Pac. R'y Co.*, 63 Iowa, 302, 308; *Sullens v. Chicago, R. I. & Pac. R'y Co.*, 74 Iowa, 659, 665. It is well settled that, in assessing damages to the land owner for right of way taken,

regard is had only to the immediate consequences of the appropriation. The owner is not, in such proceedings, compensated for damages which may thereafter result from negligent acts of the company committed after it makes the appropriation. *Fleming v. Chicago & D. M. R'y Co.*, 34 Iowa, 353; *King v. Iowa Midland R'y Co.*, *Id.* 458; *Miller v. Keokuk & D. M. R'y Co.*, 63 Iowa, 680, 685. The plaintiff's grantor's had a right to presume, when they conveyed the land to the company that built the road, that the work of constructing the road would be properly done; that sufficient culverts for the passage of surface water at proper places would be put in and maintained. The evidence shows that with a suitable culvert, properly taken care of, at the Campbell outlet, no damage would have ensued to the plaintiff. By neglect and carelessness on part of the defendant surface water from several hundred acres of land, and which never before passed over her land, was gathered in the ditches of the defendant, carried along and finally discharged upon her land. Damages arising from such an act have never been held to be included in the price paid for right of way. The cases cited are decisive of this question upon the facts disclosed by this record.

III. It is contended that this action is barred by the statute of limitations; that the action accrued more than five years prior to the commencement of this suit. It must be conceded that the water conducted upon the plaintiff's land submerged several acres of the land for nearly every year since the road was built. Such is the allegation in the petition, and the evidence sustains it. The Hunt and Campbell culverts were put in in 1882, and the situation of the ditch and Hunt culvert has been substantially the same ever since they were constructed, except the ditch has washed out and become deeper. It also appears that this surface water

3. ——: ——: damages: statute of limitations.

was not discharged upon the Hunt land every year; it depended upon the season, the amount of rainfall, and the quantity which fell at one time. In other words, the overflow was not constant; it was not continuing in the sense of occurring each year. It was entirely dependent upon circumstances. At one time the overflow might be slight, and beneficial to the land; at another it might be great and occasion much damage. It would appear, then, that the first overflow which occasioned damage would furnish no safe or substantial basis from which future damages could be calculated. The learned counsel for the appellant relies upon the case of *Powers v. Council Bluffs*, 45 Iowa, 652. That case is, to our minds, clearly distinguishable from this one. In the Powers case the whole injury was regarded as having occurred at one time, and, that time being more than five years prior to the commencement of the suit, it was held to be barred. The injury was of such a character as to be beyond the defendant's power to remedy. It would be compelled to go onto the lands of others to erect barriers to prevent the damage. In this case the remedy, as shown by the evidence, is in the defendant's own hands, by work done upon its own land. *Drake v. Chicago, R. I. & P. R'y Co.*, 63 Iowa, 302, 309; *Miller v. Keokuk & D. M. R'y Co.*, 63 Iowa, 680, 683. Again, it is clear that the plaintiff herein could not have maintained an action until some actual injury was caused to her by the diversion of the water by the defendant. There is here no claim of any such injury until 1888—less than two years prior to the commencement of this action. True, the evidence shows various overflows of the plaintiff's land prior to that, but, if they caused any injury, no damage is claimed for it. *Powers v. Council Bluffs*, 45 Iowa, 652; *Drake v. Chicago, R. I. & P. R'y Co.*, 63 Iowa, 302, 309; *Miller v. Keokuk & D. M. R'y Co.*, 63 Iowa, 680, 684; *Drake v. Chicago, R. I. & P.*

R'y Co., 70 Iowa, 59, 63; *Sullens v. Chicago, R. I. &*
*P. R'y Co.*, 74 Iowa, 659, 666. The same doctrine is
recognized in *Haisch v. Keokuk & D. M. R'y Co.*, 71
Iowa, 606, 608. The action is not barred.

IV. It is contended that, inasmuch as the defend-
ant came into possession of the railway as grantee
from another, long after the nuisance, if
any, existed, it is not liable for damages
arising from its continuance until its attention is called
to it, and it is asked to abate it. Without deciding
this question, we may say the evidence shows that
defendant had sufficient notice, and took no steps to
prevent the damage until after this action was com-
menced.

4. ——: ——:
   evidence.

V. Certain deeds were introduced in evidence by
the defendant, showing that it acquired title to the
property in December, 1888; also a decree
of the United States circuit court of date
May 28, 1889, at which time it is apparent the receiver
who had formerly been operating the road made his
final settlement with the court. The defendant con-
tends it did not come into actual possession of the road
until May 30, 1889—two days after this decree
was entered. It introduced evidence showing such
fact, but it was stricken out by the court on the theory
that it contradicted the written proof in evidence.
While it is not entirely clear from this record, yet we
think the jury might fairly presume that, inasmuch as
the defendant received a deed to the railroad, and filed
it in December, 1888, and as the decree of the United
States circuit court shows that the receiver's duties,
"save as to accounting and being discharged, have
ceased," that the defendant was in possession of the
railroad at and prior to the overflow in April and May,
1889, and the striking out of the evidence, if error,
was without prejudice.

5. ——: ——:
   damages.

VI. The defendant asked the court to give an

instruction as follows: "*Nineteen.* The jury are instructed that there is no claim made by the plaintiff for any sediment or deposit carried on the land by any act of the defendant, for, under the issues as made in the pleadings, no such claim is made, and therefore it must not be taken into consideration in determining your verdict." It was refused by the court, and upon this, error is assigned. The defendant's theory is that evidence touching the deposit of earth, clay and other materials upon the plaintiff's land by the overflow of the water, not being specially pleaded, should have been excluded. The petition, it is true, did not in terms complain of such deposits, but the action was for damages carried to the plaintiff's land by the wrongful diversion of surface water by the defendant, and its discharge upon the plaintiff's land. The depositing of earth, clay and the like substances were the usual and probably necessary results of the overflow complained of. It would be inconceivable how a large quantity of water could be discharged from the defendant's ditch upon the plaintiff's land, which had the effect of making the channel of the defendant's ditch deeper, without carrying more or less of the deposit onto the plaintiff's land. Clearly, then, whatever was the natural, if not necessary, result of the overflow, as the deposits made by it on the plaintiff's land, must be held to be within the allegations made in the petition, and evidence as to such deposits was properly admitted.

VII. We cannot consider questions for the first time raised on the motion for a new trial, as they are not brought up by this appeal, which is not taken from a ruling upon said motion. Many other errors are assigned. We have considered them all, and find nothing prejudicial to the defendant. The judgment of the district court is AFFIRMED.