88 281
105 231

88 281
111 114

88 281
117 541

88 281
126 337

88 281
f142 149
142 157

A. S. WILLITTS, Appellee, v. CHICAGO, BURLINGTON & KANSAS CITY RAILWAY COMPANY, Appellant.

1. **Surface Water**: RULE IN IOWA: APPLICATION TO RAILROADS. The rule in this state as to the right of interference with the natural flow of surface water is, that, while every man may improve his own land as he pleases, he must do so in a careful and prudent manner, so as to occasion no unnecessary inconvenience or damage to his neighbor. Accordingly, where the defendant railway company had built an embankment across the plaintiff's land in such a way as to interfere with the flow of the surface water therefrom, and, in an action for damages therefor, there was evidence tending to show that the defendant could have relieved the plaintiff's land from the surface water by keeping open a ditch which had been cut along and within its right of way for that purpose, held, that there was no error in refusing to order a verdict for the defendant.

2. ———: INTERFERENCE WITH BY RAILROAD: STATUTE OF LIMITATIONS. In an action against a railroad company for interfering with the flow of surface water, the cause of action as stated in the petition was for an improper construction of its embankment, but, in view of the answer and reply, the issue upon which the cause was tried was the defendant's failure to keep open a ditch which had been cut along the embankment for the purpose of carrying off the surface water. Held, that the cause of the damage in question not being permanent, an action based thereon was not single, and was not barred in five years after the first injury had accrued under the cause complained of.

3. ———: ———: RIGHTS OF PURCHASER: NOTICE: DAMAGE NOT INCLUDED IN RIGHT OF WAY. The injury complained of, and the cause thereof, being known to the defendant's officers, held, that such action could not be defeated upon the ground that the nuisance had existed prior to the acquisition of the road by the defendant, and that the plaintiff had not expressly notified it of the nuisance and demanded its abatement; nor upon the ground that, in the absence of notice, it had the right to presume that the damage complained of had been considered in the original procurement of the right of way.

4. ———: ———: DAMAGES: INSTRUCTION. The jury was properly instructed that it should not consider any damages accruing more than five years prior to the beginning of the action, and that the measure of damages was the difference between the value of the land, including crops, etc., before and after each flooding; but that the plaintiff could not recover for crops planted by him when he knew

they would be flooded and destroyed, although, even then, they should consider the rental value of the land flooded and the permanent injury thereto.

5. ——: ——: EVIDENCE. The sufficiency of a bridge to carry off the water of a particular stream may be shown by the testimony of one who has knowledge of the fact from actual observation, though he is not an expert.

6. ——: ——: ——. Evidence as to the cultivation of crops prior to the time for which the plaintiff was entitled to recover, and of the effect of the water thereon, *held*, admissible as tending to show the effect of the water on the land within the time for which a recovery could be had, the jury being instructed that it could not be considered for any other purpose.

7. ——: ——: ——. The testimony of a civil engineer that a couple of culverts through the defendant's embankment would help materially in draining the land, *held*, admissible for the purpose of showing one of the means by which the appellant could have avoided the injury complained of.

*Appeal from Van Buren District Court.*—HON. W. I. BABB, Judge.

THURSDAY, MAY 18, 1893.

THE plaintiff states as his cause of action that he is the owner of the land described; that the defendant so constructed its line of railway across said lands as to throw up an embankment which prevents the surface water and other water coming on his lands from flowing off in their natural course, and causes the same to collect upon, flow back over, and remain upon his lands, to his damage, two thousand, five hundred dollars. The defendant answered, denying generally, and averring that the road was constructed in the year 1871 by the Burlington & Southwestern Railway Company; that the construction was permanent, and in a skillful manner; that the cause of action is barred, the cause of action, if any, having accrued in 1871; that this defendant became the owner of the road in February, 1882, and has ever since operated it.

The case was tried upon these issues, and on

appeal was reversed; this court holding that evidence of facts in avoidance of the plea of the statute of limitations was not admissible without being pleaded in reply. 80 Iowa, 531. After the cause was remanded, the plaintiff filed a reply, admitting that the railroad was constructed by the Burlington & Southwestern Company in 1871, and that the defendant became the owner in 1882. The plaintiff alleged that after the construction the Burlington & Southwestern Company attempted to make a way for the water on plaintiff's land obstructed by the embankment to escape therefrom by cutting a ditch along the north side of the embankment within the right of way, but that the ditch has never been sufficient, for the reason that it was permitted to fill up and become obstructed, and was not kept open, or large enough, although the companies attempted, from time to time, to do so; that defendant's section foreman on that part of the road repeatedly promised to open said drainage; and put in culverts sufficient to drain said land; that he did some work in cleaning said ditch nearly every year, but has not kept it sufficiently open or large enough to carry off the water, although the plaintiff had repeatedly requested him to do so. The defendant's demurrer to this reply being overruled, the case was tried upon these issues, resulting in a verdict and judgment for the plaintiff. The defendant appeals.—*Affirmed.*

*Sloan & Work, H. H. Trimble,* and *Palmer Trimble,* for appellant.

*Wherry & Walker,* for appellee.

GIVEN, J.—The following facts are shown by the evidence introduced, and are not contradicted nor disputed in the testimony:

The plaintiff was the owner of the land described in 1871 and has been ever since. In that year the Burlington

& Southwestern Railway Company, having acquired a right of way over said land, constructed a solid embankment thereon as a roadbed from a point on the east line of said land southwesterly across it to Indian creek, a short distance west of the west line of the land. A bridge was constructed across Indian creek of sufficient capacity to carry off all water flowing in that stream. In consequence of the conformation of said land and the building of said embankment the surface water falling upon the land and coming thereon from the hills north and west of it was prevented from flowing from the land as it naturally would but for the embankment. Because of the embankment, the surface water stood upon said land until carried off by settling into the earth and by evaporation. About the year 1877 the Burlington & Southwestern Railway Company cut a ditch along the north side of the embankment within the right of way for the purpose of carrying said surface water southwesterly into Indian creek. By reason of this ditch becoming obstructed with sediment and *debris* from time to time, it failed to carry off the surface water from the plaintiff's land. The ditch was several times wholly or partially cleared by each of these companies while operating the road, but was not kept so as to drain the surface water from plaintiff's land. This railroad was operated by the Burlington & Southwestern Railway Company and its receiver until February, 1882, since which time it has been owned and operated by the defendant company.

I.    The appellant cites the rule of the common law, namely, "that surface water is a common enemy which every landowner may repel at pleasure and refuse to receive on his land," and contends that this is the rule in Iowa as between individual landowners, and alike applicable to individuals and railroad companies. Several cases are cited wherein this rule has been so applied,

1. SURFACE water: rule in Iowa: application to railroads.

notably *Cairo Railroad Co. v. Stevens*, 73 Ind. 278;
*O'Connor v. Fond du Lac Railroad Co.*, 52 Wis. 526, 9
N. W. Rep. 287. The rule of the civil law is that the lower
land owes to the higher land the service or servitude of
being bound to receive all of the water which naturally,
without the hand of man, flows down upon it. The fol-
lowing extract from the case of *Sullens v. Chicago, R.
I. & Pac. Railway Co.*, 74 Iowa, 659, will show that
neither of these rules has been adopted in Iowa by stat-
ute, as in some of the states, nor followed without qual-
ification by this court. It is there said, in speaking of
the case of *Abbott v. Kansas City Railway Co.*, 83 Mo.
271, as follows: "That case adheres to the common
law rule, and seems to depend in part upon the fact
that by the statutes of Missouri the common law is
made the rule of action and decision in that state. In
this state there is no requirement of that kind, and we
are free to determine the questions involved according
to such rules of law as shall seem to us to be applicable.
The difficulty which must sometimes arise from at-
tempts to apply the strict rule of the common law to
all cases is illustrated by the fact that the supreme
court of Missouri was constrained to abandon it in two
cases, which were overruled in the one cited above.
Each case must, of necessity, depend largely upon its
facts. Even in those states where the common law
prevails the courts hold that the landowner must
improve his property in a reasonable manner. *Hosher
v. K. C., St. J. & C. B. R'y Co.*, 60 Mo. 329; *Abbott v.
R'y Co.*, 83 Mo. 271; *Pettigrew v. Evansville*, 25 Wis.
229. 'But persons exercising this right to improve and
ameliorate the condition of their own land must exer-
cise it in a careful and prudent way. Each propri-
etor, in such case, is left to protect his own lands
against the common enemy of all, so as to occasion no
unnecessary inconvenience or damage to plaintiff.'
*McCormick v. K. C., St. J. & C. B. R'y Co.*, 57

Mo. 433. See, also, *Benson v. Chicago & Alton R'y Co.*, 78 Mo. 504. This court said, in *Livingston v. McDonald*, 21 Iowa, 172, that 'the rules of the civil law, so far as they deny to the upper owner the right to collect the water in a body, or precipitate it in greatly increased or unnatural quantities upon his neighbor, to the substantial injury of the latter, we deem to be just and equitable; and to this extent it is supported by the weight of authority in the common-law courts.' It also said: 'We recognize the general rule that each may do with his own as he pleases, but we also recognize the qualification that each should so use his own as not to injure his neighbor.' *Id.* 173. The same principle as applied to the obstruction of a flow of surface water from the dominant to the servient estate was recognized in *Drake v. Chicago, R. I. & Pac. R'y Co.*, 63 Iowa, 302. The rule thus far adhered to by this court seems to be just, and we do not think there is sufficient cause to abandon it. The reasons for requiring that improvements on land be so made as to do no unnecessary injury to other lands apply with especial force to the construction of railways."

It will be seen from this case and *Livingston v. McDonald*, 21 Iowa, 161, that neither of the rules above stated has been adopted in its entirety in this state, but that, in common with the courts of many of the states, "we are free to determine the questions involved according to such rules of law as shall seem to us to be applicable." It is clearly the rule in this state that persons exercising the right to improve the condition of their own land must exercise it in a careful and prudent manner, so as to occasion no unnecessary inconvenience or damage to the servient owner; or, in other words, while each may do with his own as he pleases, he must do so in a manner not to unnecessarily injure his neighbor. There being evidence tending to show that the defendant and its prede-

·cessor could have relieved the plaintiff's lands from the surface water by keeping open the ditch that was cut for that purpose, there was no error in overruling the defendant's motion for a verdict, nor in the giving and refusing instructions as to the rule in respect to surface water. The case being so exactly within the rule announced in *Sullens v. Chicago, R. I. & P. R'y Co.*, 74 Iowa, 659 it is hardly necessary that we refer to other authorities. See, as relating to the subject, the following cases: *Drake v. Chicago, R. I. & P. R'y Co.*, 63 Iowa, 303; 70 Iowa, 59; *Moore v. Chicago, B. & Q. R'y Co.*, 75 Iowa, 263; *Noe v. Chicago, B. & Q. R'y Co.*, 76 Iowa, 360; *Wharton v. Stevens*, 86 Iowa, 15; *Hunt v. Iowa Central R'y Co.*, 86 Iowa, 15.

II. It is claimed on behalf of the defendant that, as the obstruction, the embankment, was a permanent structure, the cause of action is single, and for all damages present and prospective; that, being single, the cause of action accrued at the time of the first injury, to wit, in 1872, more than five years before the commencement of this action; and that, therefore, the action is barred. While it may be said that the cause of action as stated in the petition is for an improper construction of the embankment, yet, in view of the answer and reply, that is not the issue upon which the case was tried, but rather for a failure to maintain the ditch in proper condition to carry off the surface water. The cause of the injury thus alleged was not permanent, but only that which could be reasonably and readily removed, and with the removal of which the injury would cease. In each of the cases cited the cause of the injury was permanent, and consequently damages might at once be fully recovered.

The appellant contends in argument that the ditch along the embankment was not intended to drain the defendant's land, but was a mere right of way ditch,

*2. ——: interference with by railroad: statute of limitations.*

and that it was made to carry the water from, instead of to, Indian creek. We do not so understand the evidence. True, the plaintiff, in speaking of the condition of the ditch, and that it did not carry off the water, gave as a reason, "it has to run up hill," basing his answer, no doubt, upon the obstructed condition of-the ditch. Henry Rastoffer, who worked upon that section, says: "The ditch commences about nineteen or twenty rails east of the west line of the plaintiff's land, and empties into Wolf branch, running alongside of the track, inside of the right of way fence." There is no evidence in conflict with this, nor with the con-clusion that the ditch was designed to carry off the surface water from the plaintiff's land as well as from the south side of the defendant's right of way. The cause of action not being single, nor the damages prospective, the plaintiff's right to recover damages sustained within the five years next preceding the bringing of this action was not barred.

III. Appellant further contends that, coming into the ownership of the railroad as it did, it is not liable to the plaintiff until "express notice of

3. ——. ——: rights of purchaser: no-tice: damage not included in right of way.

the nuisance and demand for its abatement was served upon it." There can be no doubt but that the defendant's officers were fully informed of the fact of the injury complained of. It is evident that they knew, not only the conditions, but the cause thereof. It is said that in the absence of notice the defendant might presume that this damage had been taken into consideration and paid for in the original procurement of the right of way. The defendant had no right to so presume. Such damages are not an element in assessing right of way damages. See *Drake v. Chicago, R. I. & P. R'y Co.*, 63 Iowa, 303, and 70 Iowa, 59.

IV. Appellant complains of the measure of damages submitted to the jury. The court instructed the

**4.** ——: ——:
damages:
instruction.
jury that they could only allow for damages sustained within the five years next prior to the bringing of this suit, and then as follows: "In arriving at this, you will find the different times that it was flooded with water during said five years, caused by said embankment, if any; then take the value of the land each time before the flooding and after such flooding, considering the condition of the land as to crops as well as other elements in arriving at this difference of value, and the difference in value, if any, would be the damage on account of any particular act of flooding, and the aggregate of said sums, if any, will be the amount of your verdict. But if you find from the evidence that it was fully evident to the plaintiff at any time that it was useless to plant any crop upon any part of the land in question because it was certain to be flooded and destroyed, and that plaintiff, notwithstanding such fact, planted a crop upon the same, and it was destroyed by water which was caused to stand upon same by said embankment, then the value of the crop planted upon the same under such circumstances is not an element which you should consider in estimating his damages, but you might consider the rental value and permanent injury to the land, if any, under such circumstances in estimating his damages." This instruction is clearly within the rule in *Drake v. Chicago, R. I. & P. R'y Co.*, 63 Iowa, 303, and 70 Iowa, 59; *Sullens v. Chicago, R. I. & P. R'y Co.*, 74 Iowa, 659; and *Peden v. Chicago, R. I. & P. R'y Co.*, 78 Iowa, 134.

V. The appellant complains of certain rulings of the court in admitting testimony over his objection.

**5.** ——: ——:
evidence.
The plaintiff was asked if bridge 62 was sufficient to carry off the water coming down Wolf branch, to which he answered: "It would be if it wasn't for the water running from Indian

creek." Wolf branch is the channel into which the ditch along the embankment emptied, and through which it flowed into Indian creek. While there was no complaint as to the capacity of bridge 62, there was no error in admitting the evidence, as it related directly to the drainage of the plaintiff's land. It is said that the witness was not shown to have the requisite skill to form an opinion as to the sufficiency of the bridge. It appears he answered from actual observation.

VI. The plaintiff was permitted to testify that his reason for planting crops was that Hosford and

6. —: —: —. Smith, officers connected with the management of the road before the appellant acquired it, had promised to drain his land. The court instructed that this evidence was received only for the purpose of bearing upon the question as to why the plaintiff continued to try to cultivate the land, and that it should not be considered for any other purpose. Evidence as to the cultivation of crops prior to the five years, and the effect that the water had thereon, was introduced as tending to show the effect of the water on the land during the five years. With this instruction there was certainly no error in admitting the evidence.

VII. Mr. Burton, a civil engineer, was permitted to answer, over the appellant's objection, that a couple

7. —: —: —. of culverts through the embankment would help materially in draining the land. This evidence was proper, as showing one of the means by which the appellant could have avoided the injury complained of.

A witness was permitted to testify that the embankment was raised two or three inches in 1886. There was no pretense that this change in the embankment affected the flow of water, and, while the evi-

dence was immaterial, it was certainly without prejudice to the appellant.

Several witnesses were permitted to testify that they were engaged in cleaning out the ditch at the time they heard of the commencement of this suit; that they did not finish work, but were ordered to quit, and that they had worked part of two days.  It is probable that this work was being done on the day the suit was brought and the day following   It was certainly so near that time as that no prejudice can result from admitting that evidence.

Our examination of the case leads us to the conclusion that the judgment of the district court should be AFFIRMED.