BENSON v. THE CHICAGO & ALTON RAILROAD COMPANY, *Appellant.*

1. **Excessive Verdict.** Where the verdict is manifestly excessive in amount, this court will reverse the judgment.

2. **Measure of Damages in Action for Flooding Land.** In an action on the case for flooding land the plaintiff can recover only the damages done up to the institution of the suit. It is, therefore, error to instruct the jury that the proper measure of damages is the difference between the market values of the land immediately before and immediately after the flooding took place.

3. **Diversion of Water Courses—of Surface Water.** The authorities are generally agreed against the right of one proprietor to divert a natural water course, so as to throw the water upon an adjacent proprietor to his injury; and in this State the law seems to be settled that in respect even to surface water the dominant proprietor has no right, in diverting it, to obstruct its course by collecting it together, as in artificial ditches, and conduct it to and discharge it upon the servient land in increased volume.

4. **Railroads: EASEMENT: FLOODING ADJACENT LAND.** The grant of a right of way to a railroad company carries with it the right to make the necessary embankments, culverts and ditches, for the proper grade and protection of the road; and if in exercising this right with due care and skill the flow of surface water from adjoining land of the grantors is obstructed, it is *damnum absque injuria.*

5. **Instructions** should be framed solely with reference to the issues made.

6. **Water Course.** The ordinary flow of surface water does not constitute a water course.

*Appeal from Lafayette Circuit Court.*—Hon. WM. T. WOOD,
Judge.

REVERSED.

*Walker & Reed* for appellant.

*Hall, Young & Wilson* for respondents.

PHILIPS, C.—This is an action to recover damages re-
sulting from turning the flow of water from its natural
course on to the lands of respondent by appellant. The
petition states substantially that plaintiffs owned certain
lands on the line of defendant's railroad; "that on or about
the 1st day of July, 1878, defendant built and constructed
said railroad through and across said real estate, and through
and across lands east of and adjacent thereto, and in build-
ing and constructing the road-bed of said railroad, defend-
ant failed and neglected to provide and construct proper
openings and water-ways through the said road-bed, but
did so construct and build the same that the drainage from
the surface of and the water flow from a large scope of
country to the east of said real estate, which by its natural
course and channels did not flow over the said real estate,
was diverted from its natural course and channels and
turned and directed so as to flow over and through the land
of plaintiff, (describing it,) through an opening and culvert
in said road-bed, built and constructed by defendant, near
the eastern boundary of and upon said real estate, to plaint-
iff's damage in the sum of $600." There was a similar
count for damages alleged to have been caused by the flow
of water coming from the west, but as that issue was found
for defendant no further notice need be taken of it.

The answer tendered the general issue as to the tres-
pass, and for special defense alleged that the railroad com-
pany known as the Lexington, Lake & Gulf Railroad
Company, built the road-bed in question, with the sanction

of and license from the plaintiffs, evidenced by a deed of conveyance therefor, dated August 28th, 1871, duly acknowledged and recorded, by which they conceded to said railroad the right of way over said lands with a width of fifty feet on either side. The answer averred that the defendant, as the grantee and successor of said company, occupied and built its road to completion over said road-bed so made by its predecessor, and conformably to said grant from plaintiffs, and it is then averred that if any damage was sustained by plaintiffs by reason of any of the matters complained of, the same was caused by the said Lexington, Lake & Gulf Railroad Company when defendant entered thereon, and plaintiffs having required the said railroad so built by defendant to be built on said road-bed, cannot now complain, but are estopped, etc. The answer further pleaded that the plaintiffs, by their deed having granted, for a valuable consideration, the right of way to build and maintain over its said way a railroad, had conceded to defendant ·the right to build embankments, if necessary to its use ; that said road as far as built by it was done with due care, free from negligence, with proper culverts and appliances for drainage ; and if any damage had resulted to plaintiffs it was such only as resulted unavoidably from the proper use and employment of defendant's franchise and property.

The cause was tried before a jury. The evidence showed that the road-bed in question was constructed by the said Lexington, Lake & Gulf Railroad Company ; that in 1878 the defendant company was operating the road and built a culvert through the road where it runs across plaintiff's land. This culvert emptied into a natural water course of considerable size with a deep bed and wide banks. From plaintiffs' land on the south side of the road (the water-fall being from the southeast to the northwest) there were no natural water courses, or branches so-called. The land was rolling prairie, and the water ran off by surface flow. To the east of plaintiffs' land, say a quarter of a mile, was a farm, the topography of which was similar to that of plaint-

iffs', the water running therefrom in the same general direction. Where it struck the railroad there was an embankment of about five feet. The water was carried from this point by means of an artificial ditch dug by defendant on its right of way to and discharged through said culvert into said natural water course. The injury, if any, done to plaintiffs' land was by reason of the increased flow of the volume of water through this culvert, and its spread over the contiguous land. The evidence, so far as applicable to the questions of law to be decided, will be noticed in its proper connection.

The court gave, on behalf of plaintiff, the following instructions:

1. If the jury believe from the evidence that there were one or more water courses which began and ran east of plaintiffs' land, and did not run over or through said land, and which by their natural channels crossed the line of defendant's road-bed east of plaintiffs' said land, and that in the construction of said road-bed defendant failed and neglected to provide and construct proper culverts and water-ways for the passage of the water running in said water courses through said road-bed, but did so build and construct said road-bed that the said water courses, if any, were dammed up, and the water which was accustomed to run in them was diverted from its natural channels, and by means of an artificial ditch or otherwise, defendant turned the same over and across the land of plaintiffs, and that plaintiffs were damaged thereby, then they will find for plaintiffs on the first count in their petition.

2. It is not necessary, in order to constitute a water course for the purposes of this suit, that there should be water constantly in the bed or channel thereof, but it is sufficient if the same have a permanent natural location and that water is accustomed to run therein during a part of the year and in certain seasons, and is made up from the running of surface water which finds its natural outlet through its channel.

3.   If the jury find for the plaintiffs, the measure of damages will be the difference in the market value of plaintiffs' land immediately before the diversion of the water courses, and immediately afterward, not exceeding the amount claimed in the petition, not taking into account any other damage which may have been occasioned by the construction of said railroad, save that occasioned by the diversion of water courses.

4.   If the jury believe from the evidence that there is a water course which began and ran west of plaintiffs' real estate described in their petition, and did not run over or through said land, and which by its natural channel crossed the line of defendant's road-bed west of plaintiffs' said land, and that in the construction of its road-bed defendant failed and neglected to provide and construct proper culverts and water-ways for the passage of the water running in said water course through said road-bed, but did so build and construct said road-bed that the said water course, if any, was dammed up and the water which was accustomed to run in said water course was diverted from its natural channel and turned and made to flow over and across the land of plaintiffs, and that the plaintiffs were damaged thereby, then they will find for plaintiffs on the second count in the petition.

The defendant asked the following instructions :

1   On the evidence in this case the plaintiffs cannot recover.

2.   If the jury believe from the evidence that the road-bed and embankment of the defendant were constructed in the usual and proper manner with a culvert of sufficient capacity for the escape of water, and that said embankment was necessary for the building of defendant's railroad, and that no natural water course was interfered with by defendant or its agents, or the Lexington, Lake & Gulf Railroad Company, but that plaintiffs' damage, if any was sustained, was caused by surface water alone, then plaintiffs cannot recover, and the jury will find for defendant.

3. The difference between surface water and a natural water course is, that surface water is such water as is caused by the melting of snow and ice, and rains, which water diffuses itself over the ground, while a water course is a running stream of water having a bed and clearly defined banks, though a water course may be sometimes dry; and if the jury believe from the evidence that the water that flowed through the culvert on plaintiffs' land was surface water as above defined, then plaintiffs cannot recover, and the jury will find for defendant.

4. If the jury believe from the evidence that plaintiffs by deed conveyed the right of way through the land in controversy to the Kansas City, St. Louis & Chicago Railroad Company, its successors and assigns, and that said company afterward conveyed all its interest to the defendant company, and that the latter completed its road by the 31st day of December, 1879, then in the absence of any negligence, unskillfulness or mismanagement in the construction of the embankment or the road-bed, the injury done to plaintiffs' property, if any injury was done, must be considered as the natural and necessary consequence of what the defendant had acquired the lawful right to do, and such damages, if any were sustained, must be taken to have been included in the compensation paid for the right of way, and for such damages plaintiffs cannot recover.

5. It is the privilege and duty of the defendant to dig or cause to be dug along the side of its road-bed and embankment a ditch of sufficient capacity to carry off the surface water caused by melting snows, ice and rain; and if the jury find from the evidence that the injury of which plaintiffs complain was caused by surface water as defined in instruction number three, passing along and through the ditch on the south side of defendant's road, and thence through the culvert over the plaintiffs' land, then the plaintiffs cannot recover, and the finding should be for defendant.

6. If the jury believe from the evidence that the in-

juries and damages claimed by the plaintiffs were occasioned by the flowing or flooding from surface water, and not by the diversion by the defendant of a natural water course, as defined and explained in instruction number three, then there can be no recovery in this case, and the finding must be for the defendant.

All of which the court refused, save the fourth. The jury returned a verdict for the plaintiffs in the sum of $175, from which defendant has appealed.

I.    If there were no other questions involved in this record than the amount of the verdict itself, it is not apparent how the judgment of the circuit court can be sustained. The jury unquestionably took as their guide in estimating the amount of damages the mere opinion of two witnesses, who were permitted to express it as to what they would consider the difference between the value of the land with the railroad obstruction and without it, rather than the actual damage proven to have been sustained. Under the issues no prospective damages could be considered by the jury, nor the relative value of the plaintiffs' land with or without the railroad embankment, or the manner of draining the lands. It was simply as to the amount of damage plaintiffs had sustained by reason of the wrongful inundation, if any, of the land. Plaintiffs' testimony touching this issue was this : Leeper stated, " I never saw the water overflow the Benson land ; I saw where it had overflowed about one-fourth of an acre. The land was worth $40 an acre." Price stated, " I have seen no water flow over Benson's land up to March 19th, 1879," (the date of the institution of the suit). Prather stated, " I cannot say that Benson is damaged ; under some circumstances I think she would be benefited ; in a dry season it is very desirable for farmers to have plenty of water for stock ; there is nothing like a well defined channel obstructed by this railroad ; it is all smooth plow land ; they plow and run reapers over it." Wilson stated, " There is corn growing on part of the Benson land, and wheat and

*1. EXCESSIVE VERDICT.*

Benson v. The Chicago & Alton Railroad Company.

meadow on the balance." From which it is apparent that there was no evidence of any overflow, save the single instance mentioned by the witness Leeper, and that was limited to one-quarter of an acre. As the evidence did not disclose that any crop was at the time growing on the overflowed ground, the only damage possible was to the soil itself, valued at $40 per acre; one-fourth of which was $10, and yet on this evidence a verdict was rendered for $175. While appellate courts should be slow to interfere with the prerogative of juries, in passing on the weight and probative force of testimony, and should not interfere where there is any evidence tending to establish a given issue, yet where there is, as in this case, absolutely no evidence to support the verdict beyond the sum of $10, it becomes the imperative duty of this court to reverse such a judgment.

II. Under the petition and the facts in this case, we are also of opinion that the rule for the assessment of dam-

2 MEASURE OF DAM-
AGES IN ACTION FOR
FLOODING LAND.

ages declared in the third instruction given on behalf of plaintiffs, was incorrect. The action is for damages consequent upon the flooding of plaintiffs' land. This is not an action of trespass *vi et armis*, but it is an action on the case for flooding plaintiffs' land. In such case the plaintiff can only recover for damages done up to the institution of suit. *Langford v. Owsley*, 2 Bibb 216; *Shaw v. Etheridge*, 3 Jones (N. C.) 301; *Moore v. Love*, 3 Jones (N. C.) 218; *Blunt v. McCormick*, 3 Denio 283. The same rule seems to have been recognized in the instructions given in *Wayland v. St. Louis, K. C. & N. R'y Co.*, 75 Mo. 552. How could the jury under the facts of this case take into consideration any further injury to this land? The evidence showed that never since the building of the culvert in question had there been rainfall sufficient to determine the capacity of the culvert and the ravine beyond to carry off any water that might ordinarily fall. Much would depend in such case on the contingency of an unusual rainfall, the amount of water that might be absorbed by the earth, depending on its dearth, etc. Dam-

ages based on such data would be wholly speculative and unreasonable. The case is unlike that of an ascertained and permanent nuisance where prospective damages are allowable.

III. As the case must be re-tried it is proper to discuss, so far as is practical, other questions of law arising on this record. .

The authorities are agreed generally against the right of one land proprietor to divert from a natural water course water so as to throw it upon an adjacent proprietor to his injury. But as to the right of a dominant proprietor, to divert mere surface water and turn its flow upon his neighbor, there is much conflict and confusion. Each case must, in large measure, depend on its own peculiar facts. The general rule, it is true, applicable to the enjoyment of real estate is expressed in the maxim: *cujus est solum, ejus est usque ad coelum.* He has ordinarily, the right to use and improve his real estate by protecting it against water flowing over its surface. In doing so the dominant proprietor may turn it from his land on to the servient or lower land, without liability to damages. Ang. Wat. Courses, 120. Mere surface water, that which does not run in any defined course or confined channel, is regarded as a common enemy, against which any land owner affected by it may fight. *Hoyt v. City of Hudson*, 27 Wis. 656; *Hosher v. Kansas City, St. Jo. & C. B. R. R. Co.*, 60 Mo. 333. But in doing so regard must be had to another recognized maxim of law: *sic utere tuo ut alienum non laedas.* Whatever may be the rule prevailing in some states, it seems to be established in this State, that in respect even to surface water the dominant proprietor has no right in diverting it to obstruct its egress by collecting it together, as in artificial ditches, and conduct it to and discharge it upon the servient land, in increased volume, thereby subjecting the latter estate to a burden and injury it otherwise would not have suffered. *McCormick v. Kan-*

*3. DIVERSION OF WATER COURSES—of surface water.*

*sas City, St. Jo. & C. B. R. R. Co.*, 70 Mo. 359·; *Shane v. same*, 71 Mo. 237.

The deed from plaintiffs conceded to this company the right to make embankments, if necessary, and to construct **4. RAILROADS: easement: flooding adjacent lands.** culverts and ditches deemed necessary for the proper grade and protection of the road. And if in the legitimate exercise of such right the flow of surface water from plaintiffs' land was obstructed to their injury, it would clearly be a case of *damnum absque injuria*. *Clark's Adm'r v. Hannibal & St. Jo. R. R. Co.*, 36 Mo. 224. So it follows that plaintiffs could not recover any damage resulting from the accumulation of mere surface water running from their land. Especially so under the facts of this case, as the water from their land which is surface water, runs off through the culvert constructed in its natural path. If there has been any damage, for which a recovery can be had under this petition, the injury must have resulted from the interference by defendant with the water flowing from the lands east of plaintiffs.

Regard must be had to the issue tendered by the petition. It is obvious from its reading, that the matter to be **5. INSTRUCTIONS.** tried was the damages resulting from the manner of constructing the road-bed. The *gravamen* of the complaint is, that in building it "defendant failed and neglected to provide and construct proper openings and water-ways." There is really no such issue tendered as would present for determination, any question touching the obstruction of the flow of mere surface water, and its precipitation upon plaintiffs' land through artificial ditches improvidently constructed by defendant whereby an unusual accumulation of water was collected and turned on to plaintiffs' land.

The first instruction given on behalf of plaintiffs was not justified by the petition or the proofs.

In the first place, it is improperly predicated on the existence of "one or more water courses which by their **6. WATER COURSE.** natural channels crossed the line of defend-

33—78

ant's road-bed." There was, in legal contemplation, no evidence of any water course. The best legal definition of the term "water course," which I have found, is that given by Dixon, C. J., in *Hoyt v. City of Hudson*, 27 Wis. 661: " There must be a stream usually flowing in a particular direction, though it need not flow continually. It must flow in a definite channel, having a bed, sides or banks, and usually discharge itself into some other stream or body of water. It must be something more than a mere surface drainage over the entire face of a tract of land, occasioned by unusual freshets or other extraordinary causes. It does not include the water flowing in the hollows or ravines in land, which is the mere surface water from rain or melting snow, and is discharged through them from a higher to a lower level, but which at other times are destitute of water. Such hollows or ravines are not in legal contemplation water courses." Saying nothing of defendant's evidence, plaintiffs' own evidence showed that the so-called waterfalls were nothing but depressions in the land, dry except when it rained. There were gullies, but dry except in freshets. The whole land was cultivated. One of these witnesses said : " There is nothing like a well defined channel obstructed by the railroad ; it is all smooth plow land; they plow and run reapers over it "—from which it is palpable that it was mere surface drainage.

In the second place, this instruction in effect told the jury that if this channel water was diverted from its usual course " by means of an artificial ditch or otherwise" on to plaintiffs' land, to their damage, they could find for the plaintiffs. This was clearly a departure It ignored the issue tendered in the petition of a negligent construction of the embankment and the culvert, to which defendant's evidence was properly directed.

So the second instruction asked by defendant should have been given. The first part of it was directed to the issue made by the petition, and the latter part of it denied the right of recovery, if the "damage was caused by surface

water alone." *Hosher v. Kansas City, St. Jo. & C. B. R. R. Co.,* 60 Mo. 333; *Munkres v. same,* 72 Mo. 514.

Likewise under the issues in this case, we think the defendant was entitled to an instruction defining what constitutes surface water in contradistinction to a water course. And if there was no neglect and unskillfulness in the construction of the embankment and the culvert, and the water-flow was mere surface, under the petition the defendant would be entitled to a verdict.

The judgment of the circuit court is reversed and the cause remanded for re-trial in accordance with this opinion. All concur.