ST. LOUIS, IRON MOUNTAIN & SOUTHERN RAILWAY COMPANY, Appellant, v. W. G. SCHNEIDER *et al.*, Respondents.

### St. Louis Court of Appeals, April 24, 1888.

1. WATER-COURSES—OBSTRUCTION—INJUNCTION.—A slough, or bayou, extending at right angles from a natural water-course, being without a current, having no flow except when, at times, a freshet causes its waters to spread, with no defined outline, over the adjoining lands, and not being fed by any living springs, is not a natural water-course; and injunction will not lie to restrain persons having proprietary rights from erecting an embankment across its junction with the natural water-course, because of an apprehended increase in the volume of the water-course, to the plaintiff's possible injury.

2. INJUNCTION—DAMAGES ON DISSOLUTION.—In an assessment of damages upon the dissolution of a temporary injunction restraining the defendants from completing a work undertaken by contract, there is no error in an instruction that the defendants are entitled to six per centum upon the money detained from them on their contract during the pendency of the injunction, from the date on which they would have completed the contract until date of dissolution; to reasonable counsel fees and expenses, and compensation for loss of time in defending against the injunction, and reasonable costs for putting the work into the same condition it was in when the injunction was served, provided the construction was proper in the first instance, and the deterioration not due to faulty construction.

### Per Thompson, J. :

1. SURFACE WATER—INJUNCTION.—Where an outflow assumes the form of surface water, a land-owner cannot have injunction for depriving him of an easement of surface flowage over the lands of another, although such flowage may furnish a protection to the plaintiff's railway embankment.

2. INJUNCTION, HOW LIMITED.—Relief by injunction is granted only where there is plain danger; and not upon the theory or opinion of witnesses that the work to be enjoined will, to some extent, increase the height of a water-course, and where there is no just conclusion from the testimony that the increase would be to any great extent.

APPEAL from the Cape Girardeau Circuit Court,.
HON. H. C. O'BRYAN, Judge.

*Affirmea*

GEO. H. BENTON, for the appellant: The Thumb
was a natural water-course and appellant had the right
to have it continue to flow *ubi currere solebat.* Wood on
Nuisances, sec. 336; *Gardner v. Village,* 2 Johns. Ch.
162; *Shields v. Arndt,* 3 Green's Ch. (N. J.) 234; Angell.
on Water-Courses, 1, 5, and note; *Jones v. Railroad,*
18 Mo. App. 251; *Benson v. Railroad,* 78 Mo. 504;
*Hosher v. Railroad,* 60 Mo. 329; *Munkers v. Railroad,.*
60 Mo. 334; *Mangold v. Railroad,* 24 Mo. App. 59.
No one, not even municipal corporations, have the right
to obstruct the flow of an ordinary water-course by
building anything which in times of ordinary flood will
throw the water on the grounds of another. Angell on.
Water-Courses, sec. 465 *b;* Wood on Nuisances, sec.
350; *Genish v. Clough,* 48 N. H. 9; *Dubach v. Rail-
road,* 89 Mo. 483; *Sugar Co. v. Elevator Co.,* 82 Mo.
124; *Abbott v. Railroad,* 83 Mo. 271; *Brink v. Railroad,*
17 Mo. App. 177; *Myers v. City,* 82 Mo. 367; s. c., 8
Mo. App. 266. The court erred in the instructions
given to the jury on the measure of damages after
temporary injunction was dissolved.

W. H. MILLER and CRAMER & CRAMER, for the
respondents: The testimony shows that the obstruc-
tion complained of was effectually and substantially
completed before the institution of this suit. It came
too late. *Towne v. Bowers,* 81 Mo. 491. The testimony
shows, and the court so found, that the Thumb was
simply a break in the bank of Whitewater, and not a
natural water-course, as the appellant contends. The
evidence shows no special damage sustained by appel-
lant. The county court was in the exercise of its.
proper and legitimate functions, and cannot be enjoined.

3 Wait's Act. and Def., p. 749, sec. 3. Nor will an injunction be granted because of the mere apprehension of the petitioner that a wrong may be done. So a party seeking an injunction must show a particular injury distinct from what he suffers in common with the public. 3 Wait's Act. and Def., p. 689, sec. 13.

Rombauer, P. J., delivered the opinion of the court.

The plaintiff, anterior to the date of the grievance herein complained of, had constructed a railroad bank running southwardly for a distance of twenty-five miles and more in the valley of the Whitewater. The Whitewater is a stream of perpetual flow, draining a large area of country, and is about two hundred feet wide. At a certain point in its course a slough or bayou runs out of it eastwardly nearly at right angles, which slough, at its junction with the Whitewater, has a width of about one hundred and fifty feet, and a well-defined channel and banks for a distance of from four hundred to six hundred feet, and no more. This slough or bayou is known as the Thumb. The Thumb is not shown to be fed by any living springs, but in high water the waters of the Whitewater find a partial outlet through it, running through its defined channel for the distance above stated, and then spreading out through the timber and over the surrounding country without any defined channel. Across the Thumb and about one hundred and fifty feet from the eastern bank of the Whitewater, the plaintiff had on the line of its railroad constructed a truss bridge, resting on abutments. Thereafter, in the year 1886, part of defendants, who are county judges of Cape Girardeau, contracted on behalf of the county with the other defendants, to erect as part of a county road a solid embankment across the Thumb at the point of its junction with the Whitewater. The defendant contractors entered upon the performance of this work

and had nearly completed it when the plaintiff sued out a writ of injunction in this proceeding.

The annexed map which is in evidence shows the relative positions of these structures.

The plaintiff's petition or bill rests for its support upon the fact that the closing of the mouth of the Thumb, which it claimed to be a natural water-course, unavoidably raises the waters of the Whitewater in times of freshets, both below and above the mouth of the Thumb, and thereby endangers its railroad bank, which is built for a considerable distance in proximity of the Whitewater.

The court granted a temporary restraining order, but upon final hearing, the above facts appearing, dissolved the injunction and dismissed the bill. This action is complained of as error.

We see no error in this. The court was warranted in finding under the evidence that the Thumb was not a natural water-course, and that of itself was sufficient to warrant the decree rendered.

Justice Bigelow, in *Luther v. Winnisimmet Co.*, 9 Cush. 174, defines a water-course as "a stream of water usually flowing in a definite channel, having a bed or sides or banks, and usually discharging itself into some other stream or body of water." It must be more than a mere surface drainage over the entire face of a tract of land occasioned by unusual freshets or other extraordinary causes. This definition was almost literally adopted by the Supreme Court of Wisconsin in *Hoyt v. City of Hudson*, 27 Wis. 661, and subsequently by the Supreme Court of this state in *Benson v. Railroad*, 78 Mo. 504. In *Jones v. Railroad*, 18 Mo. App. 253, 256, the Kansas City Court of Appeals, citing these cases, held that, "certain swales or sloughs which were filled in time of freshets by the overflow of a stream" were not water-courses so as to subject a railroad company to an action for damages caused by closing their outlet with a solid bank.

In *McCormick v. Railroad*, 57 Mo. 437, re-affirmed

in *Abbott v. Railroad*, 83 Mo. 271, it was held that an owner may improve his lands for any desirable enjoyment, and it makes no difference that the effect of such improvement is to change the flow of the surface water accumulating thereon, or falling on the surrounding country, so as to either increase or diminish the quantity of water which has previously flowed upon the land of the adjoining proprietors to their inconvenience or injury, and that "the same rule would apply to water flowing over the country which has escaped from the banks or natural channel of a running stream of water, by reason of a flood in the stream, occasioned by heavy rains or melting snows upon the surrounding country."

Under the law thus declared the Thumb is no watercourse. Plaintiff's own evidence shows that its bed is from two to four feet higher than that of the Whitewater, it is fed by no living springs, and there is no pretense that it usually discharges itself into some other stream or body of water, or that it usually flows at all. It is, in low water, a dry bed or gulch; in ordinary water, a wet slough, or stagnant pond, and only in times of freshets does it furnish an outlet or conduit for the water of the stream to and over the adjacent low lands.

The plaintiff complains that the court erred in not permitting an amendment of the bill changing its prayer to a prayer for a mandatory injunction. Since the plaintiff was entitled to no injunction at all under the evidence, it is needless to decide whether or not, upon a proper showing, such an amendment is proper.

The only other complaint is, that the court erred in instructions given to the jury on the question of the measure of damages, upon their assessment after dissolution of the injunction. On this subject the court instructed the jury that the defendants were entitled to six per centum upon the money detained from them on their contract during the pendency of the injunction, from the date on which they would have completed the contract, until the date of the dissolution of the injunction, to reasonable counsel fees, and expenses and compensation for loss

of time, if any, in defending against the injunction, and reasonable costs for putting the work into the same condition it was in when the injunction was served, provided the construction was proper in the first instance, and the deterioration not due to faulty construction.

Defendant's motion specified these various items of damage, and claimed they amounted to fourteen hundred dollars, and the record recites that they introduced evidence tending to establish the several items of damage specified in their motion. The jury found a verdict of three hundred and fifty dollars. We see no error in this branch of the case.

All concurring, the judgment is affirmed.

Thompson, J., delivered a concurring opinion.

I concur in the conclusion reached by my learned associates and in much of the reasoning of their opinion; but I am not prepared to say whether or not the so-called "Thumb" is to be regarded for all purposes as surface water merely. The cases cited in the majority opinion and others which I have examined, in defining running streams, confine themselves to stating the distinction between water flowing in well-defined channels for the whole or the greater part of the year, and water which merely spreads out over the surface of the country, or through sloughs and swales. None of them have had to deal with a body of water of this peculiar character. The Thumb appears to be a bay or arm putting out for a short distance from a running stream, filled with water for the most of the year and having well-defined banks. I am not prepared to say whether or not for some purposes it is not to be regarded as a part of the running stream itself and whether its banks, so far as they are well defined, are not to be regarded as mere deflections of the banks of Whitewater river. I am not prepared to say, for instance, whether a man owning land at the head of the Thumb, or anywhere upon it above this

obstruction, would not have a standing in court to complain of this obstruction on the ground that, being a riparian owner, it cut him off from access to the main stream, or by damming up this portion of the main stream, preventing the flow of water into it from the stream and the flow of water out of it into the stream, and thereby changing the character of the water, rendering it stagnant and unfit for the use of his cattle. I want to guard against committing myself to an opinion which may be quoted as authority upon such a question, one way or the other, should it hereafter arise.

But on the clearest grounds the plaintiff is not entitled to any relief in this case. What is the ground upon which relief is claimed? It is, that by damming up the Thumb the waters of the Whitewater in time of flow are gorged in the elbow out of which the Thumb puts, whereby they are more liable to impinge against the plaintiff's railway embankment and wash it away. But how is it that the Thumb comes to be such an important vent for the waters of the river in time of flow? It is not because the Thumb itself between its banks, so far as they are defined, is a basin large enough to hold any considerable amount of water; it is shown that it is not. It is but one hundred and fifty feet wide at its mouth and not more than six hundred feet in its whole length. The reason why it affords a vent for the waters of the river in time of flow is, that those waters flowing through it spread out over the country beyond in the form of surface water. Now it is not shown that the plaintiff is the owner of the land over which the waters of the Whitewater so spread out after flowing through the Thumb. Those waters so spreading out clearly assume the form of surface water, and in respect of the flow of such water a railway company has no right of easement in the lands of any other proprietor. It is simply asking an injunction against the defendants for depriving them of an easement of surface flowage over other people's lands for the protection of its railway embankment, when no such easement exists in law.

Aside from this, I should not be prepared to say that if the railway company owned the lands thus subject to overflow through the Thumb in times of freshet, it would have a right to an injunction upon the evidence which is contained in this record. Such relief is not granted except where there is plain danger; and here there is nothing more than the theory or opinion of witnesses that the damming up of the Thumb will to some extent increase the height of the water in the river; but that it will increase it to any great extent is not a just conclusion from this testimony. If we are at liberty to consider well-known facts of science, · we might come to the conclusion that the effect would be merely to cause a greater scouring in the bottom of the river, deepening its channel, and diminishing the probabilities of the catastrophe against which this injunction is sought.

In regard to the conclusions arising in] respect of the assessment of damages on the injunction bond, I concur with what is said in the conclusion of the court.