AMELIA C. FRED, Respondent, v. KANSAS CITY CABLE RAILWAY COMPANY, Appellant.

Kansas City Court of Appeals, February 3, 1896.

1. **Municipal Corporations**: STREETS: CHANGE OF GRADE: NATURAL SURFACE: DAMAGES. In the absence of a prior ordinance fixing the grade, the property owner has the right to treat the natural surface as the grade; and a material change of the surface so as to impair the value of the property is a damaging thereof for public use, for which damages are recoverable.

2. **Street Railways**: RIGHT OF WAY: CHANGE OF GRADE, Where property owners on a street consent in general terms to the construction and operation of a cable road thereon, the grantee of the franchise is not authorized to remodel the street and change the grade. Grants of right of way to railroads *distinguished*.

3. **Grants**: CONSTRUCTION. A grant in general terms carries with it such incidental powers as will render the main grant effective; but such implied power differs according to the circumstances.

*Appeal from the Jackson Circuit Court.*—HON. J. H. SLOVER, Judge.

AFFIRMED.

*Karnes, Holmes & Krauthoff* for appellant.

The grant from Cothrell to Smith and Gillham gave the defendant, their assignee, the right to construct a street railway to be operated by means of an endless cable. In exercising this right the defendant was authorized to make such cuts and fills in Ninth street as were necessary to a proper construction of a

cable railway. "A grant of power is considered to include the use of all incidental powers necessary to make the principal grant effective." *Rogers, etc., Co. v. Bldg. Co.*, 32 S. W. Rep. (Missouri) 1, 3; *Cooper v. Maupin*, 6 Mo. 624, 632; *Fitzpatrick v. Mik*, 24 Mo. App. 435, 438; *Chase v. Hall*, 41 Mo. App. 15, 19; *Benson v. Railroad*, 78 Mo. 504; 78 Mo. 513; *Railroad v. Smith*, 111 Ill. 363; *Babcock v. Railroad*, 9 Metc. (Mass.) 553, 556; *Hortsman v. Railroad*, 18 B. Mon. (Ky.) 218, 221; *Railroad v. Adams*, 58 Tex. 476, 482; *Burrow v. Railroad*, 107 Ind. 432, 437; *Gilbert v. Railroad*, 69 Ga. —; *Norris v. Railroad*, 28 Vt. 99, 102; *Railroad v. Swank*, 105 Pa. St. 551, 561; Lewis on Eminent Domain, sec. 293; 1 Rorer on Railroads, pp. 312, 313; Randolph, Em. Dom., sec. 129; *Railroad v. Walbrink*, 47 Ark. 330, 334; Pierce on Railroads, pp. 132, 133; *Railroad v. Richards*, 32 S. W. Rep. (Tex. Civ. App., June, 1895) 96, 99; Mills, Em. Dom., sec. 110; 1 Wood on Railroads [Minor's Edition, 1894], p. 698, sec. 208; *Watts v. Railroad*, 39 W. Va. 196, 199; 19 Am. and Eng. Encyclopedia of Law, p. 842, note; *Clark's Adm'x v. Railroad*, 36 Mo. 202, 222, 224; *Wardell v. Watson*, 93 Mo. 107, 111.

*Scarritt, Griffith & Jones* for respondents.

(1) "In construing a grant of power to a private corporation, the power must be given in plain language or by necessary implication. Whatever is doubtful is against the corporation." *Lockland v. Railroad*, 31 Mo. 185; *Ranson v. Railroad*, 104 Mo. 380; *Carroll v. Campbell*, 108 Mo. 559; *Fanning v. Gregoire*, 16 How. 534; *Minturn v. Larue*, 23 How. (U. S.) 435; *Knapp v. Kansas City*, 48 Mo. App. 492. (2) The claim by defendant that the document signed by Cothrell amounts to a consent of the defendant to change the

grade of Ninth street in front of his premises is sheer nonsense. Lewis on Eminent Domain, sec. 574; *Hickman v. City of Kansas*, 120 Mo. 110. (3) The grade of Ninth street, with respect to which the plaintiff had a right to erect her improvements, and the one which she had a right to assume, when placing improvements on her lot, would be the permanent and everlasting grade of that street, was the natural surface thereof as it existed at the time she erected her improvements; and for any damages to her property caused by a change of grade by defendant from the natural surface she is entitled to recover. *Davis v. Railroad*, 119 Mo. 187; *Hickman v. City*, 120 Mo. 121; *Smith v. City of St. Joseph*, 122 Mo. 647.

GILL, J.—In September, 1885, the plaintiff, Mrs. Fred, bought of one Cothrell a fifty-foot lot on the north side of Ninth street, a short distance east of Woodland avenue. She at once erected thereon a business house, two stories and a basement, the first floor of which was on a level with the then recognized grade of Ninth street. During the following year (1886), and in accordance with a franchise granted to it by the proper authorities, the defendant entered upon the street and proceeded to construct a cable road, on a new grade established by the city, after plaintiff had built her house. In so doing, the surface of the street along in front of plaintiff's lot and storehouse was cut and reduced about four feet. This rendered it necessary for plaintiff to lower her building, so as to bring it down to the new grade, which she did at a cost of $1,100 or $1,200, and in addition thereto lost the basement rooms.

This suit was brought for the damages thus sustained by the change of grade, and resulted in a judg-

ment for plaintiff in the sum of $1,180, from which defendant appealed.

In order to simplify the case and state it briefly, we have omitted all reference to the parties through whom the defendant claims, the extension of city limits, etc., and shall treat the matter as though the defendant was the original grantee of the franchise and that the property was all the time within the city limits.

From what has thus far been stated, and in the absence of any further showing, it is clear that plaintiff was entitled to recover for the damages sustained to her property. In the absence of a prior ordinance fixing the grade, she had a right to treat the natural surface of Ninth street, as it existed when the building was constructed, as the true grade; and the material changing of this surface, so as to impair the value of the property, was the damaging thereof for a public use, for which plaintiff should be compensated. *Davis v. Railroad*, 119 Mo. 180.

But a defense is claimed by virtue of the conceded fact that before Cothrell conveyed the lot to Mrs. Fred, he, and other property owners on the street, signed a written consent and request for granting to defendant a franchise for constructing and operating a cable street railway "over, along, and upon" said Ninth street. It is contended that thereby Cothrell not only granted permission to defendant to occupy the street, with its cable railway, but that, along with it, and as a part of the grant, the defendant was authorized to make such changes in the grade as were necessary in the proper construction of said cable road.

Though skillfully and ably presented, we can not give our assent to the foregoing position. We are willing to concede that plaintiff is bound by the act of Cothrell. His consent appears in the nature of a written

contract, reciting a paid consideration of $1; the paper was duly signed, acknowledged, and recorded before the conveyance to the plaintiff. She, therefore, took the property subject to defendant's rights, and she stands now in the same attitude as did her grantor. But the so-called grant by Cothrell was nothing more than a consent that a right of way, or franchise, might be granted; that defendant might, in so far as he (Cothrell) was concerned, go upon Ninth street, construct and operate a cable railway. There was no consent, express or implied, that defendant might, in the construction of its road, materially change the grade of the street—might cut down the hills and fill the hollows, so as to bring the street to a grade best suited to its convenience. To give this construction to such consent or permit of the abutting owner, would be to aid in setting a trap whereby his property might be so damaged as to amount to a practical confiscation. For, if the grantee of the franchise can, under cover of the property owner's consent to the right of way, enter upon a street and reduce the grade four or five feet, it could, with the same propriety, lower it forty feet, provided, only, that such changes in grade might be deemed advantageous or desirable in the construction of the street railway.

Defendant's counsel seem to rely on the well known rule that a grant of power is considered to include the use of all incidental power necessary to make the principal grant effective; that when a man grants anything he is held to have granted everything necessary to the use and enjoyment of the thing granted. Special reliance is put on that line of cases, of which *Benson v. Railroad*, 78 Mo. 504, is a sample, wherein the deed of the right of way to a railroad passing over plaintiff's land was held to include the right in the company to raise embankments and to construct

culverts and ditches necessary for the proper grade and the protection of the road.

The fault of counsel is not in the principle invoked, but in its application. We find no objection to the rule that a grant in general terms carries with it such incidental powers as will render the main grant effective. But such implied powers are different, according to the circumstances. The grant of a right of way to an ordinary railroad implies an authority to enter upon the land and grade the roadbed, so that trains can be operated thereon; for, otherwise, the grant would be useless. But the dedication of a street, or the consent thereto by abutting property owners, does not imply a consent that the city may cut or fill the street to the damage of property fronting thereon. Nor does the grant of a cable street railway franchise carry with it, as a necessary incident, the authority to change the grade of the street. A material change of grade is not necessary to the construction and operation of a cable road. Of this we will take judicial notice. It is a matter of common observation that they are built and operated over grades incapable of accommodating any other mode of travel. When, then, property owners along the line of a street, in general terms, shall consent to the construction and operation of a cable road thereon, it will not be understood that the grantee of the franchise was also authorized to remodel and change the grade. It will rather be assumed that the parties understood, and agreed, that the cable line would be so built as to conform practically to the then existing grade. The purpose, after all, is to enforce the contract as the parties intended it. In the matter of building the roadbed of any ordinary railroad, it must be taken as the understanding that hills should be reduced and valleys raised, in order to render at all practicable the object of the grant of right of way. While, as

already stated, it will be presumed that in the construction of a cable street railway no such cuts or fills were contemplated by the parties.

Defendant introduced certain evidence, the tendency of which was to show that it was more desirable, or, perhaps, more in accord "with good engineering," to carry the line of a cable road from street to street on the same plane or angle. This may be so, and yet it furnishes no justification or excuse for materially changing the grade of the highway and thereby damaging the adjacent property. The abutting owner has rights that can not be sacrificed to suit the mere convenience of the street railway company.

The instructions have been examined, and since they clearly lay down the law applicable to the case and we discover no error in the trial, the judgment will be affirmed. All concur.