HAGGE et al. v. KANSAS CITY S. RY. CO

(Circuit Court, W. D. Missouri, W. D.   November 5, 1900.)

1. SURFACE WATER—OBSTRUCTION OR FLOW—LIABILITY FOR DAMAGES.
    No action lies against a railroad company for damages on account of the obstruction of the flow of surface water by embankments made for its roadbed.

2. SAME—SLOUGH.
    A slough which carries water only in time of freshet or excessive rainfall is not a water course, the obstruction of which by a railroad embankment without openings will render the company liable for damages.

3. WATER COURSES—NEGLIGENT OBSTRUCTION.
    The leaving of piling, used while constructing a railroad bridge across a river, standing after its completion at such height as to collect débris and cause the river to overflow its banks, is negligence which renders the company liable for damages to adjacent property, caused by the overflow.

4. JURISDICTION OF FEDERAL COURTS—AMOUNT IN CONTROVERSY—JOINT SUIT IN EQUITY.
    Landowners whose property is injured by the overflow of a stream, caused by its unlawful or negligent obstruction by defendant, may unite in a suit for injunctive relief in a federal court of equity, provided the injury to each of the several complainants amounts to $2,000.[1]

5. SAME—ALLEGATION OF DAMAGES.
    A bill filed in a federal court by several landowners to enjoin the maintenance of an alleged nuisance by obstructing a stream and causing it to overflow upon the lands of the complainants, must clearly show that the amount of damage to each complainant is sufficient to give the court jurisdiction, and an allegation of the difference in the value of the land of a complainant with and without the overflow is not a good allegation of such damage.

6. EQUITY—JURISDICTION TO ABATE NUISANCE—ADEQUATE REMEDY AT LAW.
    Ordinarily, where injury is done to land by an occasional overflow of a stream, caused by the erection and maintenance of a nuisance, and the wrongdoer is solvent, the injury may be adequately redressed by an action at law, and a court of equity will not entertain a suit to enjoin the nuisance, but there may be cases where the constant exposure of the lands to such overflow causes damages to the owners for which they cannot recover adequate compensation at law; and in such cases, where the right is clear, a court of equity will grant relief without waiting for a judgment at law establishing the fact of the nuisance and the complainants' legal rights.

In Equity.   On demurrer to bill.

Allen & Allen, for complainants.
Lathrop, Morrow, Fox & Moore, for defendant.

---

[1] Jurisdiction of circuit courts as determined by amount in controversy, see notes to Auer v. Lombard, 19 C. C. A. 75, and Tennent-Stribling Shoe Co. v. Roper, 36 C. C. A. 459.

PHILIPS, District Judge. This is a bill by several distinct landowners in the state of Kansas in the nature of a mandatory injunction against the defendant railway company to compel it to remove certain obstructions consisting of an embankment built on its line of railway and certain pilings and débris under one of its bridges on the Marais de Cygnes river hereinafter designated as "the river," which are alleged to occasion the overflow of the complainants' land in times of high water. The defendant has demurred to the bill.

It is apparent on the face of the bill that much damage to the complainants' crops has resulted from the flow of what is known as surface water, for the obstruction of which, in building embankments and the like on the defendant's railroad, no cause of action exists against the defendant. Abbott v. Railroad Co., 83 Mo. 272; Benson v. Railroad Co., 78 Mo. 504; Jones v. Railway Co., 84 Mo. 151; Walker v. Railroad Co., 165 U. S. 593, 17 Sup. Ct. 421, 41 L. Ed. 837. It is also apparent from the bill that a part of the injury complained of results from the overflow, in times of unusual freshets, of the water from the natural banks of the river, for which no liability attaches to the defendant, unless it is made to appear that such overflow is occasioned by some unauthorized obstruction placed or maintained by the defendant in the natural channel. The allegations of the bill are not as distinct in this respect as they ought to be to present an exact issue for the taking of testimony thereon. The bill contains allegations respecting what is denominated a "slough," which in times of unusual water falls served as an outlet for waters overflowing from the river, and which it is alleged the defendant's predecessor obstructed by building embankments across it for its railroad bed. Sloughs are not recognized as water courses, which a railroad company, in the construction of its roadbed, may not fill up without openings for water which may seek an outlet in times of extraordinary rainfalls. Jones v. Railway Co., 18 Mo. App. 251; Railway Co. v. Schneider, 30 Mo. App. 620. There is another allegation respecting the closing of the natural channel of Mine creek near its outlet into the river, and conducting the water thereat through an artificial channel, constructed by defendant's predecessor, into the river; the only effect of which, in so far as it may be gathered from the averments of the bill, is that at the point of confluence eddies are formed, and counter currents are created in the river. But what effect this has in causing overflows of the river is not made clear. It does, however, appear from the bill that where the bridge of the defendant spans the river the pilings used in the construction of the bridge, after its completion, were cut off and left at such height above low-water mark of the stream as to occasion the accumulation of débris to such an extent as to obstruct the natural current of the river, thereby causing the water to run over the natural bank onto some of the lands in question. If so, this constitutes negligence in so cutting off and leaving the pilings, with consequent damages. Brink v. Railway Co., 17 Mo. App. 177. And if the defendant is maintaining such nuisance, and this occasions the overflow of the water, flooding the complainants' land and injuring the crops, it presents ground of action. This being so,

as the demurrer is general, going to the whole bill, it would be bad, unless the other grounds thereof are well taken. Because of the involved allegations of the bill, it is difficult for the court, until all the facts are before it, to determine where the nonliability of the defendant occurs, and where its liability arises.

In respect to the jurisdictional question raised by the demurrer, some embarrassment arises by reason of the frame of the bill. The general rule in equity is "that, if several persons be joined in a suit in equity, and have a common and undivided interest, though separable as between themselves, the amount of their joint claim or liability will be the test of jurisdiction; but where their interests are distinct, and they are joined for the sake of convenience only, and because they form a class of persons whose rights or liabilities arose out of the same transaction, or have relation to a common fund or mass of property sought to be administered, such distinct demands or liabilities cannot be aggregated together for the purpose of giving jurisdiction, but each must stand or fall by itself alone." The authorities governing this question are principally Shields v. Thomas, 17 How. 3, 15 L. Ed. 93; Market Co. v. Hoffman, 101 U. S. 112, 25 L. Ed. 782; The Connemara, 103 U. S. 754, 26 L. Ed. 322; The Mamie, 105 U. S. 773, 26 L. Ed. 937; Gibson v. Shufeldt, 122 U. S. 29, 30, 7 Sup. Ct. 1066, 30 L. Ed. 1083; Clay v. Field, 138 U. S. 464, 11 Sup. Ct. 419, 34 L. Ed. 1044. As applied to the situation of the parties complainant here, the court is of opinion that all the separate landowners affected by the common nuisance, if any,—that is, all those whose injuries result from one and the same cause, or separate causes combining to produce the common injury,—may unite in one bill for injunctive relief, provided the extent of the injury to each separate landowner coming into the common suit amounts to $2,000, exclusive of interest and costs. Rich v. Bray (C. C.) 37 Fed. 273, 2 L. R. A. 225; Wheless v. City of St. Louis (C. C.) 96 Fed. 865. The bill, as to any whose interest is less than that sum, would have to be dismissed. The requisite jurisdictional amount should, of course, affirmatively appear on the face of the bill. This requirement is not observed with sufficient specification as to some of the complainants, while as to others the requisite fact is stated rather inferentially than by specific averment. While it is averred that the market value of the land would be so much without the alleged overflow of water complained of, and so much less by reason thereof, there are palpable objections to this mode of pleading. First, it is argumentative; second, the difference in the market value of the lands would not necessarily be the proper criterion for ascertaining the amount of injury (Benson v. Railroad Co., supra), but, rather, is it the amount of damage to each landowner, resulting directly from the occasioned overflow, which could naturally or reasonably be anticipated to occur; and, third, it is apparent from the allegations of the bill that much of the claimed damage results from mere surface water, on which no relief can be predicated, and how much results from the obstructions for which the defendant might be liable does not distinctly appear. As already stated, as the amount of value in controversy is essential to

the jurisdiction of this court, it should be distinctly averred, as arising from the wrongful act giving the cause of action. In this respect the bill is bad.

Further objection to the bill is made on the ground that a suit in equity to enjoin a nuisance is not maintainable until the complainants have established the existence of the nuisance in an action at law. In this jurisdiction this question is referred to the proper construction to be given to section 723, Rev. St. U. S., which provides that: "Suits in equity shall not be sustained in either of the courts of the United States in any case where a plain, adequate and complete remedy may be had at law." The supreme court, in Parker v. Woolen Co., 2 Black, 545, 17 L. Ed. 333, laid down the general rule under the restrictive provision of the statute touching a bill to enjoin a nuisance, from which the following propositions are deducible: A court of equity will not interpose where the redress in an action for damages at law is as plain, practical, and efficient "to the ends of justice and to its prompt administration as the remedy in equity." But equity will interpose where the injury may "be irreparable; as where the loss of health, the loss of trade, the destruction of maintenance or subsistence, or ruin of property must ensue." It will also interpose "to prevent oppressive and interminable litigation, or a multiplicity of suits, or where the injury is of such a nature that it cannot be adequately compensated by damages at law, or is such as, from its continuance or permanent mischief, must occasion a constantly recurring grievance, which cannot be prevented otherwise than by an injunction." This is supplemented by the further qualification that the party invoking this extraordinary remedy has not slept on his rights for any considerable length of time. He must be eager and prompt to appeal to the equity side of the court when the wrong is known to him. A delay of three years, or less, according to the circumstances of the particular case, may close to him the ear of the chancellor. His bill should, therefore, on its face, distinctly disclose the exigency and necessity for invoking the aid of a court of equity. Ordinarily, where the injury is done to land by the overflow of waters, produced by the erection and maintenance of a nuisance, which occurs only occasionally, in the absence of the insolvency of the wrongdoer, an action for damages would afford a complete remedy, where both the parties would be accorded the valuable right of trial by jury. It is conceivable, however, that the constant exposure of the lands to such overflows might render efforts at farming, using, and improving them so uncertain as to deter a conservative, reasonable man from plowing, planting, sowing, or otherwise improving his lands, because of the constantly impending apprehension that he might not gather the fruit of his labor. The landlord might not find a tenant, whose yearly crop was his sole dependence for daily support, who would take the risk of a lease, whereby the lands might lie idle. In such instances he would find no adequate compensation for his losses, because of the inherent difficulty of establishing them where he declined to plant, or where he failed to find a tenant who would take the risk of such uncertain cultivation. Such a condi-

tion, and the like, might well present a case "where the injury is of such a nature that it cannot be adequately compensated by damages at law, or is such as, from its continuance or permanent mischief, must occasion a constantly recurring grievance, which cannot be prevented otherwise than by an injunction." This suggests a further rule of equity that the bill for such injunction must present "a strong prima facie case of right"; and even on a hearing where the evidence is conflicting as to the culpable wrong of the defendant the chancellor will remit the parties to a trial at law. This rule was recognized by the supreme court of this state in Harrelson v. Railroad Co., 151 Mo. 483, 52 S. W. 368, which asserts that "in a clear case a court of equity will grant relief against a continuing nuisance without waiting for a judgment at law establishing the fact of the nuisance and the plaintiff's legal right; but it will not interfere in doubtful cases until there has been such a judgment at law." It appears from the allegations of this bill that since the construction of said bridge (perhaps in 1892) and the change of the channel of Mine creek (perhaps not later than 1894) there have been three overflows, and none later than 1898. And the court will take cognizance of the fact that these complainants, or at least a part of them, have pending before this court separate bills of intervention in the case of the receivership of the Kansas City, Pittsburg & Gulf Railroad Company, the predecessor of defendant, for the recovery of damages resulting from those overflows. As the question of nuisance or no nuisance, and the liability of the railroad company for its creation and maintenance, is directly involved in those cases, the court would be disposed, even if this bill were sufficient to invoke the equity jurisdiction, to defer the hearing thereof until the final adjudication of those cases. It is possible that with the foregoing suggestions the infirmities of the present bill may be cured by amendments. To the bill as it stands the demurrer is well taken, and is sustained.