JOHNSON, Respondent, v. GRAY'S POINT TER-
MINAL RAILWAY COMPANY, Appellant.

St. Louis Court of Appeals, March 7, 1905.

1. **WATERCOURSES: Surface Water.** The flood water of a
stream which entirely escapes from the bed of the stream,
passes beyond even its flood banks and spreads over the adja-
cent country is surface water and may be treated as such by
every one.

2. ——: ——: **Obstruction.** Where overflow water from the
Mississippi river passed over a protecting levee and flooded
another watercourse so that it spread beyond its channel, an
embankment made by a railroad company, which did not ob-
struct the water naturally flowing in such watercourse but did
obstruct the extraordinary flow so as to flood a neighboring
farm, was only hindering the drainage of surface water and
the railroad company was not liable for the damages caused
thereby.

Appeal from Cape Girardeau Court of Common Pleas.—
*Hon. John A. Snider*, Judge.

REVERSED.

*S. H. West* and *W. H. Miller* for appellant.

Plaintiff's instruction 3, in addition to its many
other faults, is possessed of one vital defect, in that it is
upon an entirely different theory from that embraced
in the petition. The petition charged the defendant
with negligently obstructing (by damming up) the
channel of a natural watercourse. The instruction au-
thorizes a recovery for obstructing the flow of surface
water. It is fundamental that a party must recover, if
at all, upon the theory of his petition and none other.
Pryor v. Railroad, 85 Mo. App. 367; DeDonato v. Mor-
rison, 160 Mo. 581, 61 S. W. 641; Wolfe v. Sup. Lodge,

160 Mo. 675, 61 S. W. 647; Holwerson v. Railroad, 157 Mo. 216, 57 S. W. 770; Hutchinson v. Realty Co., 88 Mo. App. 614; Chitty v. Railroad, 148 Mo. 64, 49 S. W. 868.

*Giboney Houck* and *John A. Hope* for respondent.

(1) When surface water is collected or drained into a natural depression, slough or swale, which runs into another stream, such natural depression, slough or swale is treated as a watercourse, and the water flowing therein is governed by the rules relating to watercourses and not by the principles applicable to mere surface water, and while over-flow water of a river is as a general rule treated as surface water, yet when such overflow water reaches and runs through a natural depression, such as Big Lake was shown to be, such overflow water is no longer regarded as surface water but is governed by the rules relating to natural watercourses. Jones v. Hanovan, 55 Mo. 46; Lambert v. Alcorn, (114 Ill. 313) 21 L. R. A. 611; Peck v. Harrington, 109 Ill. 611. (2) But it makes no difference whether Big Lake was a natural watercourse or not, because if the water flowing through it and which was obstructed by defendant's railroad is regarded as mere surface water, defendant had constructed its road negligently and without due care. It did not exercise reasonable care and prudence to avoid injuring plaintiff as an adjacent landowner, and it is liable for the damages he sustained notwithstanding the water obstructed may be treated as surface water. Horner v. Railroad, 60 Mo. 330; Benson v. Railroad, 78 Mo. 504; Goettenetroetter v. Kappleman, 83 Mo. App. 290; Willitts v. Railroad, 21 L. R. A. 608; Gray v. Williams, 21 L. R. A. 593; Rowe v. Railroad, 41 Minn. 384; Watermann v. Railroad, 30 Vt. 610; Hatch v. Railroad, 25 Vt. 49.

GOODE, J.—The purpose of this action is to recover damages for a loss caused by the flooding of a tract of land consisting of fifteen acres which the plaintiff was in possession of at the time of the inundation as lessee. The loss to plaintiff consisted of the destruction of growing crops of corn, potatoes and other vegetables, the drowning of poultry and live stock, injury to farming implements and household goods, and the destruction of corn and other grain that had been gathered and stored. The flooding of the land occurred in June, 1903, and was due to a great rise in the Mississippi river and the consequent overflow of the surrounding country. Running for miles through Cape Girardeau county is an extensive depression known as Big Swamp. The depression begins just south of the city of Cape Girardeau and extends southwardly for a distance not to be definitely ascertained from the evidence, but we think twelve or fourteen miles. Over most of its surface the depression is heavily timbered. Extending through the swamp is a body of water known as Big Lake, Running Lake or Cox's Lake; it is designated by all those names. It is contended by appellant that this body of water is a stream—a natural watercourse constituting the drainage channel for several creeks which run into it, surface water running down from the highlands of Cape Girardeau and Scott counties, and water from the Mississippi river when that stream rises high enough to overflow its banks. Between Big Lake and the river a levee known as Rock Levee has been built, and the waters of the Mississippi must rise above it before they can overflow into the swamp. Such overflows of the Mississippi happen infrequently. The last, prior to 1903, was in 1892. The defendant company is charged with having caused the submergence of plaintiff's land and the ruin of his crops in June, 1903, by an embankment built across Big Lake for its railway track, which embankment dammed up the so-called lake as a natural

waterway and so obstructed its flow that, at the time in question, water which otherwise would have flowed harmlessly southward, backed north over plaintiff's land, inflicting the loss above stated. The petition, after alleging the occupation of the land by plaintiff as tenant, the incorporation of the defendant company, and that it owns and operates a railroad extending from Delta in Cape Girardeau county to Gray's Point on the Mississippi river in Scott county, proceeds to aver that Big Lake is a natural watercourse and that the injury complained of was due to damming its water with the defendant's embankment so that, instead of flowing through said natural watercourse, as it had theretofore from time immemorial, it overflowed and flooded plaintiff's land.

The general course of Big Lake is southwest and the defendant's railroad crosses the lake in an east and west line. Where it crosses, the company constructed an open trestle seven hundred and three feet long and more than four feet high, which is said to afford an ample outlet for the entire volume of water ever carried by Big Lake. The answer states that the defendant constructed its road in a careful manner; made no other embankments and fills than were needed; that the openings were sufficient to let all water pass except in times of excessive and unusual floods; that it had not constructed or maintained its road so as to dam or obstruct a water course, and that in any event the loss to plaintiff was due proximately, to an excessive and unprecedented inundation of the Mississippi river. The allegations of the answer were put in issue by a general denial. The evidence tends to show that Big Lake is a natural watercourse, having in most places, but not everywhere, well defined banks and a channel; that it carries off the waters of several small tributary streams, as well as surface water flowing from highlands in its vicinity. Water from the Mississippi river in times of

floods high enough to rise above Rock Levee, would run into and overspread the depression known as Big Swamp. Big Lake occasionally, in dry seasons, ceases to run and contains only pools of water scattered along its course. It empties into Hubble creek, a natural watercourse. There is conflict in the testimony as to the width of the channel. Witnesses testified the channel ranged from thirty to one hundred or one hundred and fifty feet in width, and others that it was from a mile to three miles in width. These discrepancies have occurred from some witnesses testifying about the stream in its ordinary stage of water, and others when the entire valley or depression was flooded. The question is material. If an open trestle more than seven hundred feet long crosses the lake, the defendant's railway constitutes no obstruction to the stream if its width is less than the length of the trestle. But if, in fact, the stream is wider than the trestle where the latter is constructed, then the defendant is guilty of obstructing the watercourse with its embankment. There is testimony that Big Swamp, through which Big Lake flows, is heavily timbered except over a strip from one hundred to one hundred and fifty feet wide covered by the waters of the stream. The defendant insists that the real channel of the stream coincides with this untimbered part of the wider depression and that the entire swamp is covered with water only during great freshets.

Plaintiff's land is two miles north of the defendant's railroad. The evidence tended to show that in June, 1903, the water above the railroad track or embankment was from eighteen inches to two feet higher than the water below and tended, therefore, to show an accumulation of water north of the roadbed. It is contended by the plaintiff that this backwater extended to his farm two miles away and caused his loss. It is agreed that the inundation of Big Swamp and adjacent

lands in 1903, was by overflow water from the Mississippi river. In 1892, before the defendant's road was built, plaintiff's land was flooded by water from the Mississippi; but the evidence is conflicting as to whether that overflow reached as far over the plaintiff's land as did the one in 1903, or far enough to do damage.

The court refused to instruct for a verdict for the defendant and a verdict was found for the plaintiff.

If Big Lake is a natural watercourse, the defendant company had no right to obstruct its regular channel with a railroad dump, and would be answerable to the plaintiff if it did and damage resulted to him as a proximate consequence. The defendant contends that Big Lake is no natural stream, but merely the lowest part of Big Swamp, through which a current of water flows sometimes. A question for the jury was presented on this point; for there was plenty of testimony that Big Lake is a natural watercourse within the meaning of that phrase, as used in decisions that the flow of streams may not be interfered with so as to submerge adjacent lands. We have no doubt Big Lake is a stream and none that the defendant's railroad does not obstruct its usual channel. Practically all the testimony is that the width of the channel from bank to bank, where the railroad crosses the stream, is about one hundred feet. The dish in the earth's surface covered by Big Swamp is from one to three miles wide—where the railroad crosses, about a mile. We gather from the testimony that during inundations the entire swamp is covered with water; but it is incredible that Big Lake, as a stream or watercourse, can be from a mile to three miles wide; that is, wider than the Mississippi river throughout most of its course. It is fed by a few small creeks, the country drained by it is narrow and it ceases to run in dry seasons. There is no supply of water to maintain a considerable stream. The testimony proves conclusively that a channel exists from fifty to one hundred

and fifty feet wide and with well defined banks in most places.    This is the ordinary channel of Big Lake; and, of course, the open trestle seven hundred and three feet long, extending across from a dump on either side, did not obstruct this channel, but gave any volume of water it would hold free egress.    Perhaps the railroad and dumps did obstruct the flood channel; that is, the area outside the usual banks submerged by water which overflowed the banks during floods; and on this point the testimony raised an issue for the jury to determine, unless, for another reason, there was no case to submit. Granting that the flood channel of Big Lake was crossed by the railroad embankment and plaintiff's land overflowed in consequence, the decisive question is whether the impeded water was surface water.    There is a great contrariety of opinion to be found in the decisions as to whether the flood water of a stream, when it overflows its principal channel and spreads over bordering bottom lands, is surface water within the meaning of the rule that any one may interfere with the drainage of surface water even though in doing so he turns it on the land of a neighbor.    According to the decisions in Missouri, it seems that the flood water of a stream is held to be surface water in that sense.    Jones v. Railroad, 18 Mo. App.  251; McCormick v. Railroad, 57 Mo. 433, s. c. 70 Mo. 359; Abbott v. Railroad, 83 Mo. loc. cit. 280; Lumber Co. v. United States, 55 Fed. 852.    Perhaps the weight of authority elsewhere is to the contrary, and would hold a person who, by obstructing the flood channel of a stream, backs its redundant waters over an adjacent proprietor's lands, liable in damages.    O'Connell v. Raiload, 87 Ga. 246; Lawence v. Railroad, 16 Q. B. 643; Railway v. Brevoort, 62 Fed. Rep. 129, 25 L. R. A. 527; Railroad v. Hay Co., 149 Ind. 344; 3 Farnham, Water & Water Rights, sec. 880, p. 2562.    In the present case it is to be remembered that the backwater which did the damage, was not flood water caused by the overflow of Big Lake in consequence of an extraordinary volume of water

pouring into it from affluent streams or draining from higher lands about it, but is conceded to have been overflow water from the Misssissippi which had completely left the channel of that river and passed over the protecting levee (Rock Levee) into Big Swamp in a volume far too vast to be accommodated by the channel of Big Lake. This inundation ultimately would have disappeared, in part, by percolation and evaporation; and the remainder would have found its way into Hubble creek, into which Big Lake emptied. Now it is universally agreed by courts and text writers that flood water of a stream which entirely escapes from the bed of the stream, passes beyond even its flood banks and spreads over the adjacent country, is surface water and may be treated as such by every one. Munkres v. Railroad, 72 Mo. 514; Railroad v. Schneider, 30 Mo. App. 620; Farnham, Water & Water Rights, sec. 879, p. 2559; Railroad v. Hay Co., 149 Ind. 269. If the overflow water from the Mississippi river had been of no more than sufficient volume to fill the flood channel of Big Lake, and that channel was the regular outlet for flood water from the Mississippi, maybe it would have been a tortious act to impede its flow so as to back it over the plaintiff. But instead of Big Lake being expected to act as an outlet for the overflow of the Mississippi in that part of the country, a levee had been built between it and the Mississippi to intercept the latter's floods. Big Lake was no outlet or channel which received and disposed of the overflow of the river; but was separated from the river so as to effectually keep the river overflow away from it except during the greatest floods. It is apparent, therefore, that the water which filled Big Lake beyond its ordinary channel was surface water, and the defendant cannot be held responsible, even though the water backed over plaintiff's farm on account of defendant's embankment. As stated, this farm is two miles away. It was overflowed by the inundation of the Mississippi river in

1892. The area submerged was not so extensive as in 1903; but the Mississippi did not rise so high as in 1903. Indeed, in the latter year the flood was greater than in any year since 1844. It is extremely doubtful if the embankment had anything to do with the overflow of plaintiff's land; but if it did, it was only by hindering the drainage of surface water and for that defendant cannot be mulcted in damages in this action. The suit is not founded on a failure to construct and maintain drains as required by the statute. R. S. 1899, sec. 1110.

The judgment is reversed. All concur.